GENERAL BOX CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 32198.   Promulgated March 13, 1931.

*Ward Loveless, Esq.*, for the petitioner.
*Brooks Fullerton, Esq.*, for the respondent.

OPINION.

ARUNDELL: The four companies referred to in the findings of fact, before and after becoming affiliated, computed net income upon the basis of the calendar year. The calendar year was the taxable year of each. Sec. 212(b), Revenue Act of 1921. Unquestionably, were it not for affiliation each would be entitled to offset its net loss for 1921 against the net income for 1922, and to deduct the excess of such loss, over the net income for 1922, in computing net income for 1923, sec. 204(b), Revenue Act of 1921; though the respondent takes the position that the amount allowable as a deduction in computing net income for 1923 could not exceed the net income for that year before the deduction, a position contrary to the prior decision of this Board. *Moore Cotton Mills*, 17 B. T. A. 662; *Alabama By-Products Corporation et al.*, 18 B. T. A. 919; *Buckie Printers' Ink Co.*, 19 B. T. A. 943; and *Pittsburgh Gasoline Co.*, 21 B. T. A. 297. But well within the taxable year 1922, the four companies became affiliated, and, because of that, the petitioner and the respondent are unable to agree as to how the net loss provisions of section 204(b) should be applied, in respect of the net losses for 1921. They agree that these net losses are to be deducted from the net income of the " succeeding taxable year " and the excess thereof deducted in computing the net income of the " next succeeding taxable year," but they disagree as to what are the " succeeding taxable year " and the " next succeeding taxable year," in relation to 1921, within the meaning of section 204(b). The petitioner contends that they are the calendar years 1922 and 1923,

respectively, while the respondent says that they are the two-month period January 1 to February 28, 1922, and the ten-month period March 1 to December 31, 1922, respectively.

In the alternative, the respondent says that the two-month period January 1 to February 28, 1922, and the ten-month period March 1 to December 31, 1922, and the taxable year 1923 are neither the " succeeding taxable year " nor the " next succeeding taxable year," because the two periods are less than twelve full calendar months and the year 1923 is " not contiguous to 1921." If the respondent be wrong in his first defense and right in the alternative, the four companies will be deprived of all benefit of the net loss provisions of the Revenue Act of 1921, because that act does not govern after 1923 and the Revenue Act of 1924 takes no cognizance of 1921 net losses. *Strain Brothers, Inc.*, 19 B. T. A. 601; *C. P. Ford & Co.*, 19 B. T. A. 1010; and *Pennsylvania Electric Steel Casting Co.*, 20 B. T. A. 602.

The following tabulation shows the net income or net loss, before any deduction for net losses of any prior period or year, of each of the four companies for the years and periods above stated.

| Company | 1921 | 1922 | | | 1923 |
| | | 2 months | 10 months | Total | |
|---|---|---|---|---|---|
| Detroit Wire Bound Box Co. | ¹ $8,190.55 | $5,659.68 | $32,393.17 | $38,052.85 | $41,329.04 |
| Four-One Box Co. of Houston | ¹ 8,126.29 | ¹ 5,802.80 | ¹ 2,232.83 | ¹ 8,035.62 | 903.53 |
| Sheboygan Cigar Box Lumber & Manufacturing Co | ¹ 31,121.11 | ¹ 4,701.63 | 3,997.61 | ¹ 704.02 | 738.68 |
| Pioneer Box Co | ¹176,023.70 | ¹ 6,196.39 | 33,922.71 | 27,726.32 | 899.90 |

¹ Net losses.

The consolidated return provisions of the statute permit or require the filing of a consolidated return only for the period of affiliation. Sec. 240, Revenue Act of 1921. This requires that a separate return be filed for the period from the beginning of the taxable year to the date of affiliation, by a taxpayer which becomes affiliated with another during the taxable year. *American LaDentelle, Inc.*, 1 B. T. A. 575; *B. T. Couch Glue Co.*, 12 B. T. A. 1321; *Automatic Fire Alarm Co.*, 13 B. T. A. 1195; *Fidelity National Bank & Trust Co.* v. *Commissioner*, 39 Fed. (2d) 58; *Sweets Co. of America* v. *Commissioner*, 40 Fed. (2d) 436; and *St. Louis National Baseball Club* v. *Burnet*, 42 Fed. (2d) 984; 282 U. S. 883. It has been held that a return covering the portion of the taxable year prior to affiliation may be made the basis of a separate assessment of taxes for the period which it covers. *Green River Distilling Co.*, 16 B. T. A. 395. Conceivably, the filing of such a return may begin the tolling of the statute of limitations for the assessment of taxes for the period which it covers, though we do not have that question before us and do not ·

presume to decide it, but simply point this out in the interest of a clear understanding of the problem involved in the issue presented to us. Thus, it appears that when the status of a taxpayer has been changed from a separate to an affiliated company, during a taxable year, the portion of such taxable year prior to affiliation has been recognized as a taxable period.

A taxable period of less than twelve calendar months is not a taxable year within the meaning of sections 200(1) and 204(b) of the Revenue Act of 1921. *Arthur Walker & Co.*, 4 B. T. A. 151; *Dorsey Drug Co.*, 7 B. T. A. 229; *Turners Falls Power & Electric Co.*, 9 B. T. A. 435; *Strain Brothers, Inc., supra.* While all of the cited cases dealt with a situation in which the taxable periods were occasioned by changes in accounting periods, the same reasoning which led to our conclusions there must inevitably lead to a like conclusion as to all taxable periods, except in the situations recognized in that line of cases, such as *Carroll Chain Co.*, 1 B. T. A. 38; *Joe Siegel, Inc.*, 1 B. T. A. 1113; *Domenico Fante's Sons, Inc.*, 2 B. T. A. 1098; *W. F. Childs & Co.*, 3 B. T. A. 855; *Commercial Co. of Egypt*, 3 B. T. A. 1163; *Durabilt Steel Locker Co.*, 5 B. T. A. 239; *Bruner Woolen Co.*, 6 B. T. A. 881; *Davis Yarn Co.*, 8 B. T. A. 299; and *United States* v. *Carroll Chain Co.*, 8 Fed. (2d) 529, in which the first or last accounting period was less than twelve calendar months, due to the fact that the first full annual accounting period began at a date later than that of organization, or dissolution took place before the end of the annual accounting period. In this last line of cases, the income for the short accounting periods has been recognized as income for the taxable years for the purpose of applying the net loss provisions of section 204(b). When a taxpayer, however, is required to make two returns covering portions of one regular accounting period, because of the statutory provisions requiring it to join with its affiliated companies in a consolidated return covering the period of affiliation, the situation is within the rule that the two taxable periods are not taxable years within the meaning of section 204(b).

Accordingly, we hold that the two-month period January 1 to February 28, 1922, and the ten-month period March 1 to December 31, 1922, are not taxable years within the meaning of section 204(b), and the net losses sustained for 1921 may not be offset against, or deducted in computing, the separate net incomes of those periods.

How, then, are the 1921 net losses to be disposed of, under section 204(b)? Are they to be availed of, for the first time, as an offset against the net income for 1923, under the theory announced in *Strain Brothers, Inc., supra,* that the year 1923 is the "succeeding taxable year," in relation to 1921, because there has been no intervening taxable year? If that rule is followed in this case, the effect

would be to negative, in part, the net loss provisions of the 1921 Act, for, because of reasons already pointed out, these net losses may not be availed of in any year later than 1923, and the purpose of the statute to spread the loss of one taxable year over the two succeeding taxable years, when such loss exceeds the net income of the first, will be defeated. Inequity would flow from the rule if applied to the situation here; and where a construction of a statute will occasion great inconvenience, or produce inequality or injustice, that view is to be rejected if another and more reasonable interpretation is present in the statute. The construction placed on the statute should avoid unjust consequences, unless the language clearly compels such a result. *Knowlton* v. *Moore*, 178 U. S. 41; *Bate Refrigerating Co.* v. *Sulzberger*, 157 U. S. 37; and *Bankers' Trust Co.* v. *Bowers*, 295 Fed. 89.

It might be suggested that the unfair result which we seek to avoid here is inescapable under our decision in the *Strain Bros.* case; but that case is clearly distinguishable from the present one. In the case referred to, the short period intervening between the taxable years 1921 and 1922 and the taxable year 1924 was occasioned by a voluntary act of the taxpayer. When the taxpayer changed its annual accounting period, it brought its current one to a close and thereby terminated its taxable year, bringing itself within the provisions of section 226. The situation in which it found itself was the consequence of its own choosing, and the statute by clear language compelled it to stand the disadvantage of the tax. *Bankers' Trust Co.* v. *Bowers*, *supra*. In the present case, however, there has been no change in the accounting periods of the four affiliated companies. Each of them continued, after becoming affiliated, to compute net income on the basis of the same accounting period as before affiliation. The accounting period of each was and is the calendar year, which is also the taxable year of the affiliated group. Section 226 has no application in a situation like this. As was stated by the Circuit Court of Appeals, in *Bankers' Trust Co.* v. *Bowers*, *supra*:

Reading section 226 as a whole, it is clear that the purpose was to present a single unified plan for computing tax liability of a taxpayer who voluntarily changed his accounting period. Subdivision (a) provides for making separate returns covering a period of less than 12 months in case of taxpayer who, with the consent of the Commissioner, changes his accounting period, and this is the only provision providing for a change of accounting period except section 250(g). Subdivision (b) merely provides that in all cases where separate returns are made for part of the taxable year, the return shall include the taxpayer's income during the period covered by the separate return and that the tax rate of the calendar year in which the period falls, is applicable. The use of the phrase " all cases " undoubtedly applies to cases where separate returns are required under subdivision (a).

Had Congress intended to include within the provisions of section 226 a situation such as we are dealing with here, it might have done so in appropriate language; and one of the legal consequences of affiliation, then, would have been the termination of the taxable year of each member brought into the affiliated group. In that case, the rule announced in *Strain Bros., Inc., supra*, might well be held to apply. But Congress did not choose to do that, nor did it deem it necessary, elsewhere in the statute, to deal specifically with the situation. All of the provisions dealing with the making of consolidated returns by members of an affiliated group are contained in section 240, and there is nothing in that section which can in any way be construed as modifying the provisions of section 212(b), so as to terminate the taxable year of a corporate taxpayer upon the occasion of a change in status from a separate to an affiliated company, when such taxable year coincides with that of the affiliated group. Section 212(b) makes the taxpayer's annual accounting period its taxable year; and notwithstanding two returns may be required, in case of change in status from a separate to an affiliated company, for the accounting period in which the change is made, and both returns be made the bases for separate assessments of taxes for the periods which they cover, the taxpayer's taxable year is still its regularly established accounting period, so long as it conforms with the taxable year of the affiliated group, and the taxpayer is not only entitled but required to compute net income on the basis of that accounting period.

In view of the foregoing, we are of the opinion that in the case of the four affiliated companies referred to in the findings of fact, the " succeeding taxable year " and the " next succeeding taxable year," in relation to 1921, within the meaning of section 204(b) of the 1921 Act, are the calendar years 1922 and 1923, respectively; and, accordingly, that the net loss sustained by each for 1921 should be deducted from its net income for 1922, and any excess over the net income for 1922, determined in accordance with the principles laid down in *Swift & Co.* v. *United States*, 69 Ct. Cls. 171; 38 Fed. (2d) 365, deducted in computing net income for 1923. Also, the year 1923 is the " succeeding taxable year," in relation to 1922, and the net losses sustained by the Four-One Box Company of Houston and the Sheboygan Cigar Box Lumber & Manufacturing Company for 1922, to the extent they have not been absorbed by offsetting against the net incomes of other affiliated companies for the same year, should be deducted from their net incomes for 1923.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*