WOLVERINE PETROLEUM CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 52348. Promulgated February 27, 1934.

*Truman Post Young, Esq.*, for the petitioner.
*Bruce A. Low, Esq.*, and *T. G. Histon, Esq.*, for the respondent.

OPINION.

SEAWELL: The petitioner asks us to set aside the respondent's conclusion that the last eight months of 1923 constitute two taxable periods of four months each, requiring a consolidated return of the affiliated group for the first period and a separate return of the petitioner for the second period, and to hold that the income tax liability of the affiliated group should be computed on the basis of a consolidated return for the entire eight months. The respondent argues that the closing agreement bars a decision in favor of the petitioner.

There is agreement that the respondent split the period of eight months ending December 31, 1923, for which a consolidated return was filed, upon the theory that the affiliation was broken on August 31, 1923. The petitioner now argues that the affiliation continued throughout the year. The record here shows that the petitioner acquired all of the assets of the subsidiary companies, and such of their stock as it did not own, prior to May 1, 1923; and that the books of the several corporations comprising the affiliated group were consolidated on August 31, 1923. The revenue agents who examined the books of the petitioner and its affiliates for the fiscal year 1923 and the four-month period ending August 31, 1923, reported to the internal revenue agent in charge, St. Louis, that the petitioner "absorbed" its subsidiaries August 31, 1923. This report was considered by the respondent when computing the tax liability of the affiliated group for the years and period covered by the closing agreement. Whether in reaching a conclusion that the affiliation ceased on August 31, 1923, the respondent relied on this report or facts developed by an independent investigation, does not appear. It may be that facts other than those present here lead to the determination. In the absence of proof to the contrary, we are not warranted in saying that he did not have reasonable grounds for his holding. Whether there was a merger or consolidation of the corporations prior to May 1, 1923, or whether the affiliation continued until August 31, 1923, or beyond the close of 1923, are questions which need not be answered, for we think the major issue is controlled by other considerations.

Section 606 of the Revenue Act of 1928 authorizes the respondent to enter into written agreements with any taxpayer respecting his liability for " any internal revenue tax for any taxable period ending prior to the date of the agreement." Other pertinent provisions of the section are:

(b) *Finality of agreements.*—If such agreement is approved by the Secretary, or the Undersecretary, within such time as may be stated in such agreement, or later agreed to, such agreement shall be final and conclusive, and, except

upon a showing of fraud or malfeasance, or misrepresentation of a material fact—

(1) the case shall not be reopened as to the matters agreed upon or the agreement modified, by any officer, employee, or agent of the United States, and

(2) in any suit, action, or proceeding, such agreement, or any determination, assessment, collection, payment, abatement, refund, or credit made in accordance therewith, shall not be annulled, modified, set aside, or disregarded.

As to a similar provision in the 1926 Act (section 1106 (b)), the court in *Bankers' Reserve Life Co.*, 42 Fed. (2d) 313, said:

The purpose of the statute in providing for closing agreements was to enable the taxpayer and the government finally and completely to settle all controversies in respect of the tax liability for a particular year or years and to protect the taxpayer against a further demand by the reopening of a case as a result of a different view of the matter being taken by the government officers or as the result of subsequent court decisions prior to the expiration of the statute of limitations, and to prevent the filing of additional claims for refund or the institution of suit by the taxpayer for the same reasons. * * *

In *Dubinsky* v. *Becker* (U.S.Dist.Ct., E. Dist. Mo., Feb. 25, 1931), C.C.H. 1931, p. 8283, the court, citing numerous cases, said: ." The very purpose of the Act was to close controversies, and end negotiations, regardless of subsequent legislation, court decisions, department rulings or other situations, which might occasion the reopening of the matter." Thus it is evident that the object of the statute was to have agreements entered into in pursuance thereof end for all time the matters agreed upon except upon a showing of fraud, malfeasance, or misrepresentation of a material fact. The petitioner has no fault to find with such an interpretation of the act. It contends, however, that the statute contains no sanction for closing agreements for periods of less than a full year except where a taxpayer changes its basis of computing net income from a fiscal to a calendar year or *vice versa*. On this ground it says that the parties here were without statutory authority to agree upon the four months ending August 31, 1923, as constituting a taxable period.

The regulations of the Commissioner relating to the 1921 Revenue Act require returns of corporate income for fractional parts of a year for reasons other than a change of accounting period from a calendar to a fiscal year or *vice versa*. Arts. 621, 622, 626, and 634, Regulation 62. The reports of this Board and the courts contain many cases involving the question of whether the income tax liability of a corporate taxpayer or an affiliated group of corporations should, because of some change of status, be computed on the basis of a single or consolidated return for the whole or only a portion of a year and whether a certain period constituted a taxable year. Some of these cases arose under the 1921 Act. See *Industrial Cotton Mills Co.*, 22 B.T.A. 648; *Industrial Cotton Mills Co.* v. *Commissioner*, 61 Fed. (2d) 291; *General Box Corp.*, 22 B.T.A. 725; *Newblock Oil Co.*

*of Texas*, 26 B.T.A. 696; *Riley Stoker Corp.*, 26 B.T.A. 749; *Commissioner* v. *Riley Stoker Corp.*, 67 Fed. (2d) 688. If the affiliation actually terminated on August 31, 1923, as the respondent determined, it was proper to require a consolidated return for the period of affiliation. *Industrial Cotton Mills Co., supra;* affirmed on this point, 61 Fed. (2d) 291; *General Box Corp., supra.* These cases reflect the highly controversial character of the question in some circumstances and indicate the extent to which rulings in the matter affect taxable net income.

The power granted the Commissioner in section 606, *supra*, is stated in broad terms. Whether it extends to agreements covering a single item affecting tax liability in a taxable period is beyond the scope of our inquiry. Certainly the statute confers authority to enter into agreements finally and completely settling all matters affecting a taxpayer's tax liability, such as was done here. What in fact and law constitutes a taxpayer's taxable period is, in some cases, only one of the many things that enter into the determination of a taxpayer's correct tax liability. If a taxpayer and the Commissioner could not agree upon such a question in closing agreements, controversies of that character would have to await the bar of the statute of limitations or pass through the courts for final disposition. The act contains no words indicating such an intent. We think the statute, in the circumstances present here, authorized the execution of the closing agreement in question.

The petitioner argues further that, if there is statutory authority for the agreement, it contains no agreement of the parties thereto that the period from May 1 to August 31, 1923, constitutes a taxable period. The statement attached to the letter of July 17, 1929, clearly shows the respondent's treatment of the return for the first half of the last eight months of 1923, and contains his method of reaching the tax liability or consolidated net loss of the affiliated group for each of the four fiscal years and the short period. It does not appear that this treatment of the return by the respondent was ever questioned. The fact that the petitioner and its affiliates held the closing agreement from the time of the receipt of the letter of July 17, 1929, until September 12, 1929, when they signed it, indicates that the contents of the document were considered before the paper was signed. The agreement sets forth in unmistakable terms that the periods within its provisions are the " Fiscal years ended April 30, 1920, April 30, 1921, April 30, 1922, April 30, 1923, and period May 1, 1923 to August 31, 1923." The principal sum of $600,667.19 was set forth in the document as the income and profits tax liability of the taxpayers for such periods. The agreement of the parties that such sum constitutes the income and profits tax liability of the affiliated group for the periods covered thereby must be regarded as including

an agreement upon the four months ending August 31, 1923, as constituting a taxable period.

Finally, the petitioner argues that if the statute authorizes the respondent and a taxpayer to agree upon what constitutes a taxable period of less than a year in cases involving other than a change of accounting period, and the parties here did agree upon the period of four months ending August 31, 1923, as a taxable period, the closing agreement in question here should not operate against it because of misrepresentation of a material fact "in regard to affiliation," made by a revenue agent to the respondent. The only evidence on the point is that revenue agents, as already pointed out, reported that the petitioner "absorbed" its affiliates on August 31, 1923. Obviously, the respondent is not required to follow reports of his subordinates in determining a taxpayer's tax liability for a specified period. For aught we know his final determination, which, of course, controls, might have been based upon an entirely different investigation containing other facts. The claim made involves not a misrepresentation by the respondent, but one alleged to have been made by an employee under his jurisdiction. The agents' statement, at most, is nothing more than a mistake of fact.

In *Hyde* v. *United States*, 59 Fed. (2d) 302, the plaintiff reported certain income for tax purposes in accordance with a statement received from the trustees of her father's estate. Thereafter she sued for refund, claiming that by reason of the trustees' statement she had overstated her income, and was entitled to set aside a closing agreement for the year she reported the income. In denying her claim, the court said:

The statute does not expressly limit the misrepresentations upon which the agreement may be set aside to statements made by the agents of the government, but a reading of the context shows plainly that the statute was not intended to apply to misrepresentations made by other parties.

There has been no proof of misrepresentation of a material fact by the respondent in connection with the closing agreement and its effect may not be avoided by the petitioner on that ground.

The parties having entered into a valid and binding closing agreement as to the first half of the last eight months of 1923, we are powerless to set it aside and combine the period covered thereby with the four-month period ending December 31, 1923, to redetermine the petitioner's income tax liability for the entire eight months.

In view of the conclusion reached on the first issue, it is not necessary for us to consider the second allegation of error, which relates to an allowance for depreciation on intangible drilling costs for the period May 1 to August 31, 1923.

Reviewed by the Board.

*Decision will be entered for the respondent.*