In re Marianne **HOPKINS**, Debtor.

Marianne **HOPKINS**, Plaintiff–Appellant,

v.

**UNITED STATES of America,** Defendant–Appellee.

No. 97–15936.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 16, 1998.

Decided June 17, 1998.

Eric M. Nixdorf, Law Offices of Stephen M. Moskowicz, San Francisco, California, for the plaintiff-appellant.

Laurie A. Snyder, Tax Division, United States Department of Justice, Washington, DC, for the defendant-appellee.

Before: GOODWIN, FLETCHER, and D.W. NELSON, Circuit Judges.

GOODWIN, Circuit Judge:

Chapter 7 debtor, Marianne Hopkins, brought an adversary proceeding against the Internal Revenue Service ("IRS") to void certain tax liens assessed against her separate property because of joint tax returns she and her husband filed for the tax years 1982, 1983, and 1984. Ms. Hopkins argued that she was entitled to relief under the "innocent spouse" provisions of § 6013(e) of the Internal Revenue Code. The bankruptcy court concluded that Ms. Hopkins could not raise an "innocent spouse" defense after already having signed a closing agreement under § 7121(b) of the Internal Revenue Code. The bankruptcy court entered summary judgment in favor of the government, and the district court affirmed. This court has jurisdiction to review the case pursuant to 28 U.S.C. §§ 158(d) and 1291. We affirm.

I.

Ms. Hopkins is now divorced from her husband. However, during the taxable periods at issue, Ms. Hopkins was married and filed joint tax returns with her husband. For the years 1981, 1982, 1983, and 1984, Ms. Hopkins and her husband took deductions on their joint returns in connection with a certain partnership in which her husband was involved. Later, upon auditing the returns, the IRS determined that the deductions were improper.

In 1988, after Ms. Hopkins had separated from her husband, the IRS settled the dispute with Ms. Hopkins' husband. The settlement was embodied in a Form 906 closing agreement which was signed by both Ms. Hopkins and her husband. The terms of the closing agreement allowed Ms. Hopkins and her husband to benefit from a portion of the contested deductions and did not assess any penalties against them in connection with the disallowed deductions. The closing agreement provided in pertinent part:

Under Section 7121 of the Internal Revenue Code Donald K and Marianne Hopkins ... and the Commissioner of Internal Revenue make the following closing agreement:

WHEREAS, the Taxpayers were investors in Far West Drilling Associates ("the Partnership"), beginning with the taxable year 1981.

WHEREAS, the Taxpayers have made cash contributions to the partnership in the total of $67,500.

WHEREAS, the Taxpayers have claimed losses with respect to their interest in the Partnership on their Federal income tax return beginning in the

year 1981, the allowance of which are contested by the Commissioner of Internal Revenue.

**WHEREAS, the parties wish to resolve with finality the Federal income tax consequences of their investment in the Partnership.**

NOW THEREFORE, it is hereby determined and agreed for federal income tax purposes that:

1. The Taxpayers are entitled to an ordinary deduction in the amount of $50,625.00 for the taxable year ending December 31, 1981, with respect to their interest in the Partnership . . .

2. The Taxpayers shall be entitled to an ordinary deduction in any taxable year ending subsequent to 1981 equal to the amount of cash payments made by them during such taxable year [determined by reference to another factor] . . .

\*      \*      \*      \*      \*      \*

4. The Taxpayers are not entitled to the investment tax credit with respect to their interest in the Partnership for any taxable year.

\*      \*      \*      \*      \*      \*

7. No penalty shall be assessed against the taxpayers . . . as a result of their interest in the Partnership. The increased interest rate pursuant to I.R.C. § 6621(c) shall apply.

\*      \*      \*      \*      \*      \*

This agreement is final and conclusive except:

\*      \*      \*      \*      \*      \*

(1) the matter it relates to may be reopened in the event of fraud, malfeasance, or misrepresentation of material fact;

(2) it is subject to the Internal Revenue Code sections that expressly provide that effect be given to their provisions notwithstanding any other law or rule of law except Code section 7122 . . .

\*      \*      \*      \*      \*      \*

By signing, the above parties certify that they have read and agreed to the terms of this document. (Emphasis added).

On November 7, 1988, in accordance with the closing agreement, the IRS accounted for the disallowed deductions, and made assessments for the additional taxes owed. Along with the tax assessments the IRS also made assessments for interest computed in accordance with § 6621(c). The IRS then filed notices of tax liens against Ms. Hopkins and her husband in Marin County, California, in order to secure payment of the assessments.

In 1995, Ms. Hopkins, who had since divorced her husband, filed a petition for bankruptcy. Ms. Hopkins also filed a complaint seeking a determination that her tax debts were dischargeable in bankruptcy and that the corresponding tax liens entered against her and her husband were unenforceable against her separate property because she was an "innocent spouse" within the meaning of § 6013(e) of the Internal Revenue Code. In support of her claim, Ms. Hopkins alleged that the returns for the tax periods in question substantially understated their tax liabilities, that the understatements were attributable to various deductions taken in connection with a particular partnership that her husband was involved in, and that she did not significantly benefit from the tax understatements.

The government agreed with Ms. Hopkins that her underlying tax liabilities were dischargeable in the bankruptcy proceeding, but the government nevertheless insisted that the tax liens remained enforceable against her separate property because Ms. Hopkins signed a closing agreement and did not reserve an "innocent spouse" defense in that closing agreement. Accordingly, the government filed a motion seeking summary judgment on the tax liens issue.

In opposing the summary judgment motion in the bankruptcy court, Ms. Hopkins argued that the closing agreement resolved only the issue of whether the partnership deductions were valid, and did not determine conclusively the personal tax liability of Ms. Hopkins or her husband. Ms. Hopkins also argued that the closing agreement was unenforceable as against her because the only reason she

signed it was that her husband had threatened to harm her if she did not sign it.[1]

On June 25, 1996, the bankruptcy court granted summary judgment in favor of the government, concluding that Ms. Hopkins waived the right to assert the "innocent spouse" defense by signing the closing agreement in 1988. The bankruptcy court rejected the argument that the closing agreement was an adhesion contract.

On July 10, 1996, Ms. Hopkins timely appealed the order and judgment of the bankruptcy court to the Bankruptcy Appellate Panel for the United States Court of Appeals for the Ninth Circuit ("BAP"). Upon motion of the government, the BAP transferred the case to the district court.

On April 24, 1997, the district court affirmed the bankruptcy court's grant of summary judgment in favor of the government. The district court pointed out that closing agreements are final only as to the matters specifically agreed to therein. At the same time, the district court found that where a couple has filed a joint tax return and has entered into a closing agreement to settle any dispute concerning the filing of that tax return, it is implied in the closing agreement that the couple will remain jointly and severally liable for any tax adjustments arising out of that closing agreement. The district court thus found that by signing the closing agreement, Ms. Hopkins agreed to be liable for any and all of the taxes agreed to in the closing agreement and that Ms. Hopkins accordingly waived an "innocent spouse" defense.

Ms. Hopkins filed a timely notice of appeal from the district court's judgment on May 8, 1997.

## II.

█ The only question presented on appeal is whether the district court erred in affirming the bankruptcy court's holding that the closing agreement Ms. Hopkins signed in 1988 barred her from claiming that she was an "innocent spouse" in the current adversary proceeding. We review de novo a district court's decision on appeal from a bankruptcy court, *see In re Claremont Acquisition Corp.*, 113 F.3d 1029, 1031 (9th Cir.1997), as well as the bankruptcy court's interpretation of applicable law, *id.*

Section 7121 of the Internal Revenue Code authorizes and governs the effect of closing agreements. 26 U.S.C. § 7121. That section provides as follows:

SEC. 7121. *Closing Agreements*

(a) *Authorization.*—The Secretary is authorized to enter into an agreement in writing with any person relating to the liability of such person ... in respect of any internal revenue tax for any taxable period.

(b) *Finality.*—If such agreement is approved by the Secretary ... such agreement shall be final and conclusive, and, except upon a showing of fraud or malfeasance, or misrepresentation of a material fact—

(1) the case shall not be reopened as to the matters agreed upon or the agreement modified by any officer, employee, or agent of the United States, and

(2) in any suit, action, or proceeding, such agreement, or any determination ... refund, or credit made in accordance therewith, shall not be annulled, modified, set aside, or disregarded.

I.R.C. § 7121.

In applying § 7121, courts unanimously have held that closing agreements are meant to determine finally and conclusively a taxpayer's liability for a particular tax year or years. *See States Steamship Co. v. IRS*, 683 F.2d 1282, 1284 (9th Cir.1982) (holding that the purpose of a closing agreement is "once and for all to terminate and dispose of tax controversies"); *Miller v. IRS*, 174 B.R. 791, 796 (9th Cir. BAP 1994), *aff'd*, 81 F.3d 169 (9th Cir.1996) (holding that "a closing agreement is a written agreement between an

---

1. Ms. Hopkins raised this issue to the bankruptcy court but did not raise it again to either the district court or to this court. We therefore need not reach the question of whether a spouse may avoid the obligations of a closing agreement where he or she signed the agreement under duress.

individual and the Commissioner which settles or 'closes' the liability of that individual with respect to any internal revenue tax for a taxable period").

■ Accordingly, we reject Ms. Hopkins' argument that the closing agreement she signed did not determine her personal tax liability. The language of the closing agreement itself is telling. It states in pertinent part, "the parties wish to resolve with finality the Federal income tax consequences of their investment in the Partnership." By signing the closing agreement, Ms. Hopkins agreed to have the closing agreement determine her tax liabilities.

Ms. Hopkins argues that even if the closing agreement did determine her personal tax liability, she may nevertheless avoid the tax liabilities arising out of her closing agreement by asserting an "innocent spouse" defense. This court has yet to decide whether a taxpayer may avoid tax liabilities arising out of a closing agreement by asserting an "innocent spouse" defense.[2]

■ We now hold that a taxpayer may not avoid tax liabilities arising out of a valid closing agreement by asserting an innocent spouse defense where that defense has not been preserved in the text of the closing agreement. Closing agreements are meant to insure the finality of liability for both the taxpayer and the IRS. This is why courts have strictly enforced closing agreements, finding them binding and conclusive on the parties even if the tax at issue is later declared to be unconstitutional or in conflict with other internal revenue sections. *See Miller*, 174 B.R. at 797 (internal citations omitted). In signing the closing agreement,

Ms. Hopkins explicitly agreed to have her tax liability determined by the closing agreement. If Ms. Hopkins wished to try later to avoid the tax consequences flowing from that agreement, she had a duty to preserve any possible defenses to personal liability in that agreement. Having failed to do so, Ms. Hopkins should not now be permitted to reopen the question of her liability in the current adversary proceedings on the grounds that she was an "innocent spouse." Permitting her to do so would undermine the very purpose of entering into a closing agreement in the first place.

The cases Ms. Hopkins relies on to persuade the court otherwise are not on point. In *Somervill v. Commissioner*, 1996 RIA TC Memo ¶ 96,165, 1996 WL 144352, the taxpayer was permitted to raise an "innocent spouse" defense even though the taxpayer previously had signed a closing agreement. However, in that case, the IRS did not argue, and therefore, the court did not consider whether the closing agreement precluded the taxpayer from raising an "innocent spouse" defense to the taxes in issue. Therefore, *Somervill* does not require this court to find that a closing agreement does not bar an "innocent spouse" defense.

In *In re Spendthrift Farm, Inc.*, 931 F.2d 405, 407 (6th Cir.1991) and in *Smith v. United States*, 850 F.2d 242, 245 (5th Cir.1988), the courts allowed the collection of various types of interest or penalties in addition to the taxes determined under the closing agreements because the closing agreements did not specifically address the question of interest or penalties. Ms. Hopkins argues that because the closing agreement in her

---

**2.** The two courts to have considered the issue have concluded that § 7121 bars a subsequent "innocent spouse" defense. *See Katz v. United States*, 43 AFTR 2d, 79–1124, 79–1125, 1979 WL 1336 (D.Mass.1979) (denying "innocent spouse" protection and stating that § 7121 places "suits based upon tax years closed by agreements ... within the same category as those foreclosed by the doctrine of res judicata or the statute of limitations"); *United States v. Mayfield*, 75 AFTR 2d 95–595, 95–599, 1994 WL 764114 (S.D.Ind.1994)(holding that the "innocent spouse" provisions cannot be applied where there has been a previous closing agreement absent a showing of "fraud or malfeasance on

the part of any agent of the Internal Revenue Service").

Other courts, which have not specifically addressed the effect of the "innocent spouse" provisions on closing agreements, have nevertheless held that res judicata bars a subsequent "innocent spouse" claim where a Tax Court has entered a decision of liability pursuant to a settlement agreement, *United States v. Bryant*, 15 F.3d 756, 758 (8th Cir.1994), with the parties' consent, *United States v. Zimmerman*, 478 F.2d 59, 61–62 (7th Cir.1973), or by stipulation, *United States v. Dioguardi*, 350 F.Supp. 1177, 1179 (E.D.N.Y.1972).

**734**

case did not discuss the "innocent spouse" provisions, she should not be prevented from raising the defense in the current adversary proceedings. The problem with Ms. Hopkins' argument, however, is that the *Spendthrift* and *Smith* courts only allowed the collection of interest or penalties on top of the closing agreement liabilities because closing agreements do not generally determine penalties and interest. Because it is clearly established that closing agreements do conclusively determine tax liabilities, Ms. Hopkins cannot rely on *Spendthrift* or *Smith* to invoke the "innocent spouse" defense and thereby escape the tax liabilities arising out of her closing agreement.

### III.

■ We conclude that the district court properly affirmed the bankruptcy court's order of summary judgment in favor of the government. A closing agreement is meant to be determinative of a taxpayer's liability. *See* § 7121(b) (stating that such agreements "shall be final and conclusive ... except upon a showing of fraud or malfeasance, or misrepresentation of a material fact"). Ms. Hopkins presents a sympathetic case. She claims that she was not represented by legal counsel, that she never read the closing agreement, that she, therefore, never understood its terms. Such a claim, however, does not alter the binding effect of the closing agreement. *See Miller*, 174 B.R. at 797 (holding that a closing agreement may not be set aside on the grounds that the taxpayer did not appreciate the legal ramifications of signing the agreement). We likewise reject Ms. Hopkins' arguments that the agreement did not determine her personal tax liability or that she should be able to invoke the innocent spouse defense because the agreement was silent as to the applicability of that defense.

AFFIRMED.