120 T.C. No. 17

UNITED STATES TAX COURT

MARIANNE HOPKINS, Petitioner <u>v.</u>
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 363-01.                    Filed June 30, 2003.

P filed a request for relief under sec. 6015, I.R.C., with respect to her joint and several tax liabilities for 1982 and 1983. P and H reported loss deductions from a partnership on their returns for those years. In 1988, P and H signed a closing agreement under sec. 7121, I.R.C., in which they agreed to adjustments with respect to the partnership deductions. The adjustments to the partnership deductions resulted in tax deficiencies for 1982 and 1983, which R assessed. The tax liabilities for those years were the subject of a prior bankruptcy case involving P and H and the Government. In that case, P raised a claim for relief from joint and several liability under former sec. 6013(e), I.R.C. The bankruptcy court entered judgment holding that the closing agreement precluded P from asserting her claim for relief under sec. 6013(e), I.R.C. A Federal District Court and the Court of Appeals for the Ninth Circuit affirmed the bankruptcy court's judgment. See <u>Hopkins v. United States</u> (<u>In re Hopkins</u>), 146 F.3d 729 (9th Cir. 1998). R argues that the closing agreement P

signed precludes her assertion of a claim for relief under sec. 6015, I.R.C. R also argues that the doctrines of res judicata and collateral estoppel preclude her assertion of a claim for relief under that section.

Held: P is not precluded from claiming sec. 6015, I.R.C., relief because of her closing agreement. Sec. 6015, I.R.C., was enacted in 1998 in order to provide additional relief to taxpayers who had filed joint income tax returns. Sec. 6015, I.R.C., was made applicable to any tax remaining unpaid as of July 22, 1998. P signed the closing agreement in 1988, 10 years before the enactment of sec. 6015, I.R.C. Thus, when P signed the closing agreement, she never had the opportunity to request relief under sec. 6015, I.R.C., with regard to her 1982 and 1983 joint and several tax liabilities.

Held, further, the doctrines of res judicata and collateral estoppel do not preclude P's claim for sec. 6015, I.R.C., relief.

Sandra G. Scott, for petitioner.

Thomas M. Rohall, for respondent.

RUWE, Judge: The issue for decision is whether a closing agreement entered into under section 7121[1] precludes the assertion of a claim for relief from joint and several liability under section 6015 where petitioner signed the closing agreement before the effective date of section 6015. We hold that it does not.

_____

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code as amended.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. At the time of filing the petition, petitioner resided in Kentfield, California.

Petitioner was formerly married to Donald K. Hopkins.[2] Petitioner filed joint income tax returns with Mr. Hopkins from 1978 to 1997. Petitioner and Mr. Hopkins claimed deductions on their joint returns for 1982 and 1983, which related to a certain Far West Drilling partnership. They claimed a loss deduction of $83,402 on their joint return for 1982. They claimed a loss deduction of $91,086 and a depletion deduction of $2,126 on their joint return for 1983. Those deductions were erroneous.

Respondent audited the Far West Drilling partnership. In the course of respondent's examination, petitioner and Mr. Hopkins agreed to settle their tax liabilities relating to Far West Drilling. They signed a Form 906, Closing Agreement on Final Determination Covering Specific Matters, dated September 28, 1988. The closing agreement provides:

> Under section 7121 of the Internal Revenue Code Donald K and Marianne Hopkins 111 Diablo DR., Kentfield, CA 94904 * * * and the Commissioner of Internal Revenue make the following closing agreement:

---

[2]Petitioner and Mr. Hopkins were separated on Feb. 1, 1989. At some point thereafter, they were divorced.

WHEREAS, the Taxpayers were investors in Far West Drilling Associates (the "Partnership"), beginning with the taxable year 1981.

WHEREAS, the Taxpayers have made cash contributions to the Partnership in the total amount of $67,500.00[.]

WHEREAS, the Taxpayers have claimed losses with respect to their interest in the Partnership on their Federal income tax return beginning in the year 1981, the allowance of which are contested by the Commissioner of Internal Revenue.

WHEREAS, the parties wish to resolve with finality the Federal income tax consequences of their investment in the Partnership.

NOW THEREFORE, it is hereby determined and agreed for Federal income tax purposes that:

1.  The Taxpayers are entitled to an ordinary deduction in the amount of $50,625.00 for the taxable year ending December 31, 1981, with respect to their investment in the Partnership. Said amount represents 75% of their cash investment in the Partnership.

2.  The Taxpayers shall be entitled to an ordinary deduction in any taxable year ending subsequent to 1981 equal to the amount of cash payments made by them during such taxable year, against their assumed portion of the Partnership debt to Mitchell Petroleum Technology Corporation, upon substantiation of such cash payments.

3.  The Taxpayers' basis in the Partnership shall be $0 as of December 31, 1981.  The Taxpayers will, however, be allowed an increase in their basis in the Partnership, equal in amount to any subsequent cash payment by Taxpayers made pursuant to their assumption of a portion of any debt of the Partnership to Mitchell Petroleum Technology Corporation.

4.  The Taxpayers are not entitled to the investment tax credit with respect to their interest in the Partnership for any taxable year.

5. The Taxpayers are not entitled to any deductions in the taxable year ending December 31, 1981, or in any subsequent year, other than the deductions which are set forth in paragraphs "1" and "2" above.

6. Any release, discharge or forgiveness of any obligation with respect to the Taxpayers' investment in the Partnership in any year subsequent to the taxable year ending December 31, 1981 will not result in gross income to the Taxpayers in any taxable year.

7. No penalty shall be assessed against the Taxpayers for the taxable year ended December 31, 1981 or any subsequent taxable year by reason of the disallowance of any losses claimed as a result of their interest in the Partnership. The increased interest rate pursuant to I.R.C. § 6621(c) shall apply.

This agreement is final and conclusive except:

(1) the matter it relates to may be reopened in the event of fraud, malfeasance, or misrepresentation of material fact;

(2) it is subject to the Internal Revenue Code sections that expressly provide that effect be given to their provisions notwithstanding any other law or rule of law except Code section 7122; and

(3) if it relates to a tax period ending after the date of this agreement, it is subject to any law, enacted after the agreement date, that applies to that tax period.

By signing, the above parties certify that they have read and agreed to the terms of this document.

Respondent accepted the closing agreement on October 13, 1988.

Respondent made adjustments to petitioner and Mr. Hopkins's 1982 and 1983 returns pursuant to the closing agreement. Those adjustments resulted in deficiencies for 1982 and 1983, which

respondent assessed.[3] Respondent filed notices of Federal tax lien with the county recorder of Marin County, California, relating to those assessments. The tax liabilities for 1982 and 1983 remain unpaid.

On February 8, 1995, petitioner filed a chapter 7 bankruptcy. She also filed an adversary complaint in the U.S. Bankruptcy Court for the Northern District of California, Santa Rosa Division, in which she sought to be relieved of her joint and several tax liabilities, and the related tax liens, for 1982 and 1983 under former section 6013(e). The Government filed a motion for summary judgment, arguing, inter alia, that petitioner was barred from seeking relief because she had executed a closing agreement under section 7121 with respect to the Far West Drilling adjustments. The bankruptcy court granted the Government's motion, concluding that petitioner was precluded by the closing agreement from asserting a claim for relief under section 6013(e). Petitioner appealed from that judgment to a Federal District Court. The District Court affirmed the bankruptcy court's decision. Hopkins v. United States (In re Hopkins), 79 AFTR 2d 97-2625, 97-1 USTC par. 50,446 (N.D. Cal. 1997). Petitioner then appealed to the Court of Appeals for the

---

[3]The increase in tax for 1982 was the product of both the adjustment to the partnership deduction that petitioner and Mr. Hopkins claimed for that year and the recomputation of a certain NOL carryforward deduction they claimed for 1982.

Ninth Circuit, which also affirmed.  Hopkins v. United States (In re Hopkins), 146 F.3d 729 (9th Cir. 1998).

On May 24, 1999, petitioner filed a Form 8857, Request for Innocent Spouse Relief, with respondent for her 1982 and 1983 joint and several tax liabilities in which she requested relief under the recently enacted provisions of section 6015.  On January 8, 2001, petitioner filed a petition for relief from joint and several liability with this Court.  At the time of petitioner's filing the petition, respondent had not made a determination with respect to her request.

OPINION

We decide in this Opinion whether petitioner is precluded by her closing agreement from asserting a claim for relief from joint and several liability under section 6015.  The closing agreement was signed before the effective date of section 6015, and the tax liabilities assessed pursuant to that closing agreement were unpaid as of that effective date.  This case presents an issue  of first impression.

With certain exceptions, a husband and wife may elect to file a joint return.  Sec. 6013(a).  If a joint return is made, the tax is computed on the aggregate income, and the liability with respect to the tax is joint and several.  Sec. 6013(d)(3). However, in specified circumstances, relief from joint and

several liability was previously available under former section 6013(e) and is currently available under section 6015.

Section 6013(e), as amended,[4] provided generally that a spouse could be relieved of a joint and several liability if: (1) A joint income tax return was filed; (2) the return contained a substantial understatement of tax attributable to grossly erroneous items of the other spouse; (3) in signing the return, the spouse seeking relief did not know, and had no reason to know, of the substantial understatement; and (4) under the circumstances it would be inequitable to hold the spouse seeking relief liable for the substantial understatement. Cheshire v. Commissioner, 115 T.C. 183, 189 (2000), affd. 282 F.3d 326 (5th Cir. 2002). However, relief under section 6013(e) was difficult to obtain. Id.

Congress enacted section 6015 on July 22, 1998, as part of the Internal Revenue Service Restructuring and Reform Act of 1998 (RRA 1998), Pub. L. 105-206, sec. 3201(a), 112 Stat. 734. Congress repealed former section 6013(e) as part of this enactment, and section 6015 was given retroactive effect with

---

[4]Sec. 6013(e) was enacted in the Act of Jan. 12, 1971, Pub. L. 91-679, sec. 1, 84 Stat. 2063, as amended by the Deficit Reduction Act of 1984, Pub. L. 98-369, sec. 424, 98 Stat. 801.

respect to any liability for tax remaining unpaid as of July 22, 1998.  See RRA 1998 sec. 3201(g)(1), 112 Stat. 740.[5]

Section 6015 is more accessible than former section 6013(e). See Cheshire v. Commissioner, supra at 189; H. Conf. Rept. 105-599, at 249 (1998), 1998-3 C.B. 747, 1003.  Section 6015 provides three avenues of relief from joint and several liability.  First, section 6015(b)(1) (which is similar to former section 6013(e)) allows a spouse to escape joint and several liability.  Section 6015(b)(2) also allows a spouse to be relieved from a portion of the understatement.  Second, section 6015(c) generally provides for an allocation of liability for a deficiency as if the spouses had filed separate returns.  Third, section 6015(f) confers upon the Secretary discretion to grant equitable relief in situations where relief is unavailable under section 6015(b) or (c).  See Cheshire v. Commissioner, supra; Mora v. Commissioner, 117 T.C. 279, 285 (2001).

In the instant case, petitioner requests relief under section 6015(b), (c), and (f) with respect to the tax liabilities

---

[5]Sec. 3201(g)(1) of the Internal Revenue Service Restructuring and Reform Act of 1998 (RRA 1998), Pub. L. 105-206, 112 Stat. 740, provides that sec. 6015 "shall apply to any liability for tax arising after the date of the enactment of this Act and any liability for tax arising on or before such date but remaining unpaid as of such date."  RRA 1998 sec. 3201(g)(2) provides that the 2-year period of limitations for filing an election in sec. 6015(b)(1)(E) or (c)(3)(B) "shall not expire before the date which is 2 years after the date of the first collection activity after the date of the enactment of this Act."

arising from the closing agreement.  Respondent argues, however, that the closing agreement precludes petitioner from asserting a claim for relief under section 6015.

Generally, petitioner's closing agreement would preclude her from asserting any defense to a tax liability covered by the agreement.  See, e.g., sec. 7121(b);[6] sec. 301.7121-1(c), Proced. & Admin. Regs.  A closing agreement entered into under section 7121 settles or "closes" the liability of an individual for any tax covered by the agreement, and it is final and conclusive as to both the taxpayer and the Commissioner.  See, e.g., S&O Liquidating Pship. v. Commissioner, 291 F.3d 454, 458 (7th Cir. 2002); Hopkins v. United States (In re Hopkins), 146 F.3d at 733;

---

[6]Under sec. 7121(a), the Commissioner is authorized to enter into a written agreement with any person relating to the tax liability of such person for any taxable period.  Sec. 7121(b) provides:

> SEC. 7121(b).  Finality.--If such agreement is approved by the Secretary (within such time as may be stated in such agreement, or later agreed to) such agreement shall be final and conclusive, and, except upon a showing of fraud or malfeasance, or misrepresentation of a material fact--
>
> (1) the case shall not be reopened as to the matters agreed upon or the agreement modified by any officer, employee, or agent of the United States, and
>
> (2) in any suit, action, or proceeding, such agreement, or any determination, assessment, collection, payment, abatement, refund, or credit made in accordance therewith, shall not be annulled, modified, set aside, or disregarded.

In re Miller, 174 Bankr. 791, 796 (9th Cir. BAP 1994), affd. without published opinion 81 F.3d 169 (9th Cir. 1996); Zaentz v. Commissioner, 90 T.C. 753, 760-761 (1988). Closing agreements may not be annulled, modified, set aside, or disregarded in any suit or proceeding unless there is a showing of fraud, malfeasance, or misrepresentation of a material fact. Wolverine Petroleum Corp. v. Commissioner, 75 F.2d 593, 595 (8th Cir. 1935), affg. 29 B.T.A. 1236 (1934); H Graphics/Access, Ltd. Pship. v. Commissioner, T.C. Memo. 1992-345.

In a prior opinion involving petitioner and the same closing agreement at issue in this case, Hopkins v. United States (In re Hopkins) 146 F.3d 729 (9th Cir. 1998), the Court of Appeals for the Ninth Circuit held that these same principles applied to preclude petitioner's assertion of a claim for relief from joint and several liability under section 6013(e). The Court of Appeals held:

> We now hold that a taxpayer may not avoid tax liabilities arising out of a valid closing agreement by asserting an innocent spouse defense where that defense has not been preserved in the text of the closing agreement. Closing agreements are meant to insure the finality of liability for both the taxpayer and the IRS. This is why courts have strictly enforced closing agreements, finding them binding and conclusive on the parties even if the tax at issue is later declared to be unconstitutional or in conflict with other internal revenue sections. * * * In signing the closing agreement, Ms. Hopkins explicitly agreed to have her tax liability determined by the closing agreement. If Ms. Hopkins wished to try later to avoid the tax consequences flowing from that agreement, she had a duty to preserve any possible defenses to personal liability in that agreement. Having failed to do so,

> Ms. Hopkins should not now be permitted to reopen the question of her liability in the current adversary proceedings on the grounds that she was an "innocent spouse." Permitting her to do so would undermine the very purpose of entering into a closing agreement in the first place. [Id. at 733.]

The Court of Appeals decided that case in the context of a claim for relief under former section 6013(e). Relief under section 6015 was not available at the time that case was decided on June 17, 1998. Following the decision of the Court of Appeals for the Ninth Circuit in Hopkins v. United States (In re Hopkins), 146 F.3d 729, section 6015 was enacted and provided retroactive relief for tax liabilities remaining unpaid as of its effective date. Petitioner argues that, despite her signing the closing agreement, she is entitled to claim relief under section 6015.

In interpreting section 6015, our purpose is to give effect to Congress's intent. Ewing v. Commissioner, 118 T.C. 494, 503 (2002); Fernandez v. Commissioner, 114 T.C. 324, 329 (2000). We begin as always with the statutory language, and we interpret that language with reference to the legislative history primarily to learn the purpose of the statute and to resolve any ambiguity in the words contained in the language. Ewing v. Commissioner, supra at 503.

Section 6015 does not address the issue of unpaid taxes arising from a section 7121 closing agreement. Section 6015 makes no explicit reference to closing agreements except for a

parenthetical reference in section 6015(g)(1).[7] However, that provision by its terms applies only in the case of credits and refunds. It does not express Congress's intent with respect to cases, such as the instant case, which do not involve credits and refunds.[8] We do not interpret Congress's failure to otherwise address closing agreements in section 6015 as evidence of its intent to restrict the availability of relief in the case of an unpaid tax liability arising from a closing agreement.

As we indicated above, section 6015 was enacted to provide spouses with broader access to relief from joint and several tax liabilities. See H. Conf. Rept. 105-599, supra at 249, 1998-3 C.B. at 1003. Indeed, Congress provided retroactive relief in the case of any liability for tax arising on or before July 22,

---

[7]Sec. 6015(g)(1) provides:

SEC. 6015(g). Credits and Refunds.--

    (1) In general.--Except as provided in paragraphs (2) and (3), notwithstanding any other law or rule of law (other than section 6511, 6512(b), 7121, or 7122), credit or refund shall be allowed or made to the extent attributable to the application of this section.

[8]Respondent argues that Congress recognized in sec. 6015(g)(1) that sec. 7121 overrides the provisions of sec. 6015. He suggests that, although sec. 6015(g)(1) applies only to credits and refunds, the parenthetical reference to sec. 7121 recognizes that closing agreements are final and conclusive except in those specific circumstances identified in sec. 7121(b). However, as petitioner points out, one could also argue that "Since Congress made closing agreements applicable to credits and refunds, if Congress had intended closing agreements also to apply to deficiencies Congress would have so stated."

1998, but remaining unpaid as of such date. RRA 1998 sec. 3201(g)(1), 112 Stat. 740.[9] It is clear that Congress intended section 6015 to be applied broadly and expansively to provide relief for joint and several tax liabilities remaining unpaid as of the effective date of section 6015. Considering Congress's purposes in enacting section 6015, we cannot construe Congress's failure to address the overall effect of closing agreements, which were entered into before the effective date of section 6015, to indicate an intent to restrict section 6015 relief that would otherwise be available in the absence of a closing agreement.

Although Congress did not address the effect of closing agreements in the situation presented here, it did address the effect of a final decision in a prior court proceeding; i.e., the effect of the doctrine of res judicata on the availability of section 6015 relief. Section 6015(g)(2) provides:

> In the case of any election under subsection (b) or (c), if a decision of a court in any prior proceeding for the same taxable year has become final, such decision shall be conclusive except with respect to the qualification of the individual for relief which was not an issue in such proceeding. The exception contained in the preceding sentence shall not apply if the court determines that the individual participated meaningfully in such prior proceeding.

---

[9]We recently construed this provision expansively to the benefit of a requesting spouse in Washington v. Commissioner, 120 T.C. 137 (2003).

On July 18, 2002, the Secretary issued published regulations which are applicable to all elections or requests for relief filed on or after such date.[10]  See sec. 1.6015-9, Income Tax Regs.  Those regulations provide with respect to section 6015(g)(2) that "A requesting spouse has not meaningfully participated in a prior proceeding if, due to the effective date of section 6015, relief under section 6015 was not available in that proceeding."  Sec. 1.6015-1(e), Income Tax Regs.  The legislative history also indicates that a spouse may elect section 6015 relief without regard to whether he or she has previously been denied relief under former section 6013(e).  See H. Conf. Rept. 105-599, supra at 251, 1998-3 C.B. at 1005.

Although section 6015(g)(2) and the regulations refer only to res judicata, we believe the same logic applies in the case of a closing agreement entered into before the effective date of section 6015.  We recognize the similarities that exist with respect to closing agreements and the doctrine of res judicata.[11]

---

[10]The final regulations were issued after the briefs in this case were filed.  See 67 Fed. Reg. 47278 (July 18, 2002).  For this reason, many of petitioner's arguments rely upon the proposed regulations.  See secs. 1.6015-1 to 1.6015-9, Proposed Income Tax Regs., 66 Fed. Reg. 3888 (Jan. 17, 2001).

[11]Under the doctrine of res judicata, or claim preclusion, a judgment on the merits in a prior suit bars a second suit which involves the same parties and is based on the same cause of action.  Meier v. Commissioner, 91 T.C. 273, 282 (1988).  The parties to the prior suit are bound by every matter that was or
(continued...)

They have a similar preclusive effect, and the policy reasons for giving final and conclusive effect to a closing agreement and a prior judgment of a court are also similar.[12]  Indeed, the Court of Appeals for the Ninth Circuit in <u>Hopkins v. United States</u> (<u>In re Hopkins</u>), 146 F.3d at 733 n.2, analogized the effect of a closing agreement to res judicata.  See also <u>Katz v. United States</u>, 43 AFTR 2d 79-1124, 79-1 USTC par. 9332 (D. Mass. 1979).

Given the similarities in the purpose of a closing agreement and the doctrine of res judicata, we cannot conclude any logical reason to afford section 6015 relief in the case of a prior judgment involving section 6013(e) and deny relief in the case of a closing agreement entered into before the effective date of section 6015.  In both situations, the taxpayer-spouse did not have an opportunity to raise a claim for relief under section 6015.  We do not perceive Congress's failure to include specifically an exception with respect to closing agreements to

[11](...continued)
could have been offered and received to sustain or defeat the claim.  <u>Commissioner v. Sunnen</u>, 333 U.S. 591, 597 (1948); <u>Calcutt v. Commissioner</u>, 91 T.C. 14, 21 (1988).  The doctrine applies to judgments even where the Court's final decision was based on an agreement of the parties.  <u>Trent v. Commissioner</u>, T.C. Memo. 2002-285 (citing <u>United States v. Bryant</u>, 15 F.3d 756, 758 (8th Cir. 1994)).

[12]The purpose of a closing agreement is to once and for all terminate and dispose of tax controversies.  <u>States Steamship Co. v. IRS</u>, 683 F.2d 1282, 1284 (9th Cir. 1982).  Similarly, the doctrine of res judicata has the "dual purpose of protecting litigants from the burden of relitigating an identical issue and of promoting judicial economy by preventing unnecessary or redundant litigation."  <u>Meier v. Commissioner</u>, <u>supra</u> at 282.

indicate Congress's intent to restrict relief in the case of a closing agreement entered into before the effective date of section 6015.

The final regulations provide an opportunity to claim section 6015 relief in the case of a section 6224(c) settlement agreement which was entered into while the spouse was a party to a pending partnership level (TEFRA) proceeding.[13] Sec. 1.6015-1(c)(2), Income Tax Regs.[14] In doing so, the final regulations provide an exception to the final and preclusive effect which we have given section 6224(c) settlement agreements.[15] The final

---

[13]Unified partnership procedures were enacted as part of the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), Pub. L. 97-248, secs. 401-407, 96 Stat. 648-671. Those procedures, as amended, are contained in secs. 6221 through 6234.

[14]We note that petitioner relies upon sec. 1.6015-1(c), Proposed Income Tax Regs., 66 Fed. Reg 3894 (Jan. 17, 2001), which provides a similar exception for sec. 6224(c) settlement agreements. She contends that the closing agreement she signed is a sec. 6224(c) settlement agreement relating to partnership items. Since we hold that petitioner is not precluded from claiming relief from the closing agreement without regard to this contention, we need not decide whether petitioner's closing agreement would be an agreement described in sec. 6224(c).

[15]Sec. 6224(c) provides:

   SEC. 6224(c). Settlement Agreement.--In the absence of a showing of fraud, malfeasance, or misrepresentation of fact--

      (1) Binds all parties.--A settlement agreement between the Secretary and 1 or more partners in a partnership with respect to the determination of partnership items for any partnership taxable year shall (except as

(continued...)

regulations contain an example illustrating, as well as providing

a justification for including, this exception.  Section 1.6015-

1(c)(3), Example (2), Income Tax Regs., provides:

> H and W file a joint return for taxable year 2002,
> on which they claim $25,000 in losses attributable to
> H's general partnership interest in Partnership B.  In
> November 2003, the Service proposes a deficiency in tax
> relating to H's and W's 2002 joint return arising from
> omitted taxable interest income in the amount of $2,000
> that is attributable to H.  In July 2005, the Internal
> Revenue Service commences a TEFRA partnership
> proceeding regarding Partnership B's 2002 and 2003
> taxable years, and sends H and W a notice under section
> 6223(a)(1).  In March 2006, H and W enter into a
> closing agreement with the Service.  The closing
> agreement provides for the disallowance of the claimed
> losses from Partnership B in excess of H's and W's out-
> of-pocket expenditures relating to Partnership B for
> taxable year 2002 and any subsequent year(s) in which H
> and W claimed losses from Partnership B.  In addition,
> H and W agree to the imposition of the accuracy-related
> penalty under section 6662 with respect to the
> disallowed losses attributable to partnership B.  In
> the closing agreement, H and W also agree to the
> deficiency resulting from the omitted interest income
> for taxable year 2002.  W may not later claim relief
> from joint and several liability under section 6015 as
> to the deficiency in tax attributable to the omitted

---

[15](...continued)
otherwise provided in such agreement) be binding
on all parties to such agreement with respect to
the determination of partnership items for such
partnership taxable year.  * * *

The standard that sec. 6224(c) prescribes for setting aside a
settlement agreement is the same standard prescribed by sec.
7121(b) for setting aside a closing agreement; i.e., such an
agreement is binding absent a showing of fraud, malfeasance, or
misrepresentation of fact.  H Graphics/Access, Ltd. Pship. v.
Commissioner, T.C. Memo. 1992-345.  This no doubt accounts for
including this provision in the final regulations as an exception
to the general rule in sec. 1.6015-1(c)(1), Income Tax Regs.,
regarding the finality of sec. 7121 closing agreements.

income of $2,000 for taxable year 2002, because this portion of the closing agreement pertains to nonpartnership items.  In contrast W may claim relief from joint and several liability as to the disallowed losses and accuracy-related penalty attributable to Partnership B for taxable year 2002 or any subsequent year(s).  This is because this portion of the closing agreement pertains to partnership and affected items and was entered into at a time when W was a party to the pending partnership-level proceeding regarding Partnership B.  <u>Consequently, W never had the opportunity to raise the innocent spouse defense in the course of that TEFRA partnership proceeding</u>.  (See § 1.6015-5(b)(5) relating to premature claims).  [Emphasis added.]

We fail to see why the same rationale does not apply to a closing agreement entered into before the effective date of section 6015.  A spouse who enters into such an agreement likewise never had the opportunity to raise a claim under section 6015 before, or at the time of, her signing the closing agreement.  Although we recognize that the final regulations were not effective for purposes of petitioner's request for relief, we believe the reason underlying the exceptions in section 1.6015-1(c)(2) and(e), Income Tax Regs., supports a conclusion that a closing agreement entered into before the effective date of section 6015 does not preclude petitioner from asserting relief under that section.[16]

---

[16]We do not decide in this Opinion the effect of sec. 6015 on a closing agreement entered into after the effective date of those rules.  However, we note that the Secretary has issued final regulations under sec. 6015 which provide that, in general, a requesting spouse is not entitled to relief from joint and several liability for any tax year for which the requesting

(continued...)

We recognize that courts have strictly enforced closing agreements executed pursuant to section 7121 (and section 6224(c) for that matter), and they are binding and conclusive on the parties even if the tax at issue is later declared to be unconstitutional or in conflict with other Code sections.  See Hopkins v. United States (In re Hopkins), 146 F.3d at 733. However, in this case, we are dealing with legislation which has retroactive effect in the case of unpaid tax liabilities and which we have broadly and expansively construed consistent with congressional intent.  Indeed, we have previously stated that the rules of section 6015 were designed to correct perceived deficiencies and inequities apparent in former section 6013(e) and that this curative legislation should be construed liberally to effectuate its remedial purpose.  Washington v. Commissioner, 120 T.C. 137, 155-156 (2003); Ewing v. Commissioner, 118 T.C. at 503; see also Flores v. United States, 51 Fed. Cl. 49, 53 (2001). Construing section 6015 liberally, we conclude that Congress did

---

[16](...continued)
spouse has entered into a closing agreement with the Commissioner that disposes of the same liability that is the subject of the claim for relief.  Sec. 1.6015-1(c)(1), Income Tax Regs.  The final regulations do not specifically address the effect of a closing agreement entered into before the effective date of sec. 6015, and all the examples in the regulations deal with closing agreements entered into after 1998.  The final regulations are applicable to all elections or requests for relief filed on or after July 18, 2002.  See sec. 1.6015-9, Income Tax Regs.  Thus, the final regulations are not effective with respect to petitioner's request for relief.

not intend to restrict the availability of section 6015 relief in the case of a closing agreement entered into before its effective date. We hold that a closing agreement entered into before the effective date of section 6015 does not preclude the assertion of a claim for relief under that section, provided the tax liability or liabilities arising from the closing agreement remain unpaid as of July 22, 1998.

In the instant case, a portion of petitioner's 1982 and 1983 tax liabilities was assessed pursuant to the closing agreement that she signed. The closing agreement was signed at a time when section 6015 relief was unavailable, and her tax liabilities remained unpaid as of July 22, 1998. In those circumstances, we hold that the closing agreement does not preclude petitioner from asserting a claim for relief under section 6015.

Respondent also contends on brief that the doctrines of res judicata and collateral estoppel preclude petitioner from asserting relief under section 6015. He relies upon the decision of the Court of Appeals for the Ninth Circuit in <u>Hopkins v. United States</u> (<u>In re Hopkins</u>), 146 F.3d 729 (9th Cir. 1998). However, as we stated above, the Court of Appeals in that case addressed petitioner's claim for relief under former section 6013(e), which, except for some similarities in section 6015(b), was far more restrictive than relief under section 6015. That

case involved a different claim from the claim which we have before us. In addition, a critical factor in the decision of the Court of Appeals was petitioner's failure to preserve her claim for relief under section 6013(e) as a defense in the closing agreement: "We now hold that a taxpayer may not avoid tax liabilities arising out of a valid closing agreement by asserting an innocent spouse defense where that defense has not been preserved in the text of the closing agreement." Id. at 733. Given the curative and retroactive effect of section 6015 and petitioner's inability to claim section 6015 relief at the time she entered the closing agreement or in the subsequent bankruptcy proceedings, we hold that she is not precluded by res judicata or collateral estoppel from raising her claims to section 6015 relief. See Trent v. Commissioner, T.C. Memo. 2002-285.[17]

---

[17]See also Friedman v. Commissioner, 82 AFTR 2d 6232, 98-2 USTC par. 50,717 (2d Cir. 1998), vacating and remanding without published opinion T.C. Memo. 1996-327 (Commissioner conceded that the provisions of sec. 6015 applied to liabilities that were unpaid as of July 22, 1998, even though a prior decision denied the taxpayer relief under sec. 6013(e)).

We hold that petitioner is not precluded by the closing agreement or the doctrines of res judicata and collateral estoppel from claiming relief under section 6015 with respect to liabilities attributable to the Far West Drilling partnership. For purposes of convenience and clarity, we address whether petitioner is entitled to relief under section 6015 in a separate opinion.