T.C. Memo. 1998-228


UNITED STATES TAX COURT


FIRST BLOOD ASSOCIATES, RICHARD M. GREENBERG,
TAX MATTERS PARTNER, ET AL.,[1] Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket Nos. 623-92, 13014-92,          Filed June 29, 1998.
      15641-92, 12062-94.

<u>Sallie W. Gladney</u>, for participants Joseph E. and Bernice L.

Goodwin.

<u>Gerald A. Thorpe</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

POWELL, <u>Special Trial Judge</u>:  These consolidated cases are

before the Court on participants Joseph E. and Bernice L.

Goodwin's (the Goodwins) motion to dismiss for lack of

_____

[1]    Cases of the following petitioners are consolidated
herewith:  First Blood Associates, Richard M. Greenberg, Tax
Matters Partner, docket No. 13014-92; First Blood Associates,
Richard M. Greenberg, Tax Matters Partner, docket No. 15641-92;
and First Blood Associates, Eugene C. Lipsky, A Partner Other
Than the Tax Matters Partner, docket No. 12062-94.

jurisdiction.  The underlying dispute arises from the Goodwins' interest in First Blood Associates (First Blood or the partnership).  The parties agree that for the partnership taxable years in issue the partnership is subject to the unified audit and litigation procedures of sections 6221 through 6231[2] enacted by the Tax Equity & Fiscal Responsibility Act of 1982 (TEFRA), Pub. L. 97-248, sec. 402(a), 96 Stat. 648.  They further agree that timely petitions were filed and, accordingly, this Court has jurisdiction over these cases.  The Goodwins, however, argue that they entered into a settlement agreement with respondent which converted their partnership items to nonpartnership items and, with respect to them, ousted this Court's jurisdiction pursuant to sections 6226(d)(1)(A) and 6231(b)(1)(C).  The issue is whether the Goodwins and respondent entered into a binding settlement agreement with respect to adjustments relating to the Goodwins' investment in First Blood for the 1983 through 1990 partnership taxable years.

FINDINGS OF FACT

First Blood is one of a number of partnerships formed to purchase and exploit the rights to certain films.  The general partners of those partnerships were Richard M. Greenberg and/or

---

[2]    Unless otherwise indicated, all sections references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

A. Frederick Greenberg.[3]  Respondent began an examination of the
partnership at some point in the mid-1980's as part of a national
project focusing on the various partnerships of the Greenberg
Brothers (the Greenberg Brothers project).  Richard M. Greenberg,
who was then the tax matters partner (TMP) of the partnership,
retained Peter L. Faber (Mr. Faber) to represent the partners at
the partnership level during respondent's examination.[4]  Mr.
Faber also represented the partners at the partnership level upon
filing the petitions in the cases at docket Nos. 623-92, 13014-
92, and 15641-92.

---

[3]     On its partnership returns for the years in issue,
First Blood claimed loss deductions arising from the alleged
purchase of the film "First Blood" starring Sylvester Stallone.
We note that whether the partnership obtained the benefits and
burdens of ownership in the film is not here at issue, but has
formed the basis for considerable securities litigation.  See,
e.g., Block v. First Blood Associates, 988 F.2d 344, 347 (2d Cir.
1993), and cases cited therein.

[4]     Richard M. Greenberg became disqualified from acting as
the TMP when an involuntary petition in bankruptcy was filed
against him in January 1994.  See sec. 6231(c); sec.
301.6231(a)(7)-1(l)(1)(iv), Proced. & Admin. Regs.; sec.
301.6231(c)-7T, Temporary Proced. & Admin. Regs., 52 Fed. Reg.
6793 (Mar. 5, 1987).

Respondent issued notices of final partnership administrative adjustments (FPAA's)[5] determining adjustments to partnership items for the following partnership taxable years:

| Docket No.[6] | FPAA Date | Partnership Taxable Year | Petition Date |
|---|---|---|---|
| 623-92 | Oct. 21, 1991 | 1983-1987 | Jan. 8, 1992 |
| 13014-92 | Mar. 24, 1992 | 1988 | June 12, 1992 |
| 15641-92 | Apr. 20, 1992 | 1989 | July 10, 1992 |
| 12062-94 | Mar. 14, 1994 | 1990 | July 11, 1994 |

At the time the petitions in docket Nos. 623-92, 13014-92, and 15641-92 were filed the partnership's principal place of business was located at Greenwich, Connecticut. At the time the petition in docket No. 12062-94 was filed the partnership was in dissolution; the partnership's principal place of business during its wind-down period was located in New York, New York.

The Goodwins were limited partners in First Blood during the partnership taxable years in issue. The Goodwins were also

5 The FPAA is the notice provided to affected taxpayer-partners of respondent's final administrative adjustment for specific partnership tax years. The FPAA is to the litigation of partnership items the equivalent of the statutory notice of deficiency in other cases. Sirrine Bldg. No. 1 v. Commissioner, T.C. Memo. 1995-185, affd. without published opinion 117 F.3d 1417 (5th Cir. 1997).

6 The petitions in docket Nos. 623-92, 13014-92, and 15641-92 were filed by the tax matters partner (TMP). The petition in docket No. 12062-94 was filed by notice partner Eugene C. Lipsky. Sec. 6226(b) provides in part that if the TMP does not file a petition, then any notice partner may, within 60 days after the close of the 90-day period set forth in sec. 6226(a), file a petition for readjustment of partnership items for the taxable year involved.

petitioners in a non-TEFRA proceeding before this Court at docket No. 17752-85, which addressed a tax controversy arising from their investment in First Blood for the 1982 partnership taxable year. Thomas E. Redding (Mr. Redding) was the Goodwins' counsel of record in docket No. 17752-85 as well as in the cases now before the Court.[7]

Joseph F. Long (Mr. Long), an attorney in respondent's District Counsel office in Hartford, Connecticut, represented respondent in settlement negotiations for the Greenberg Brothers project. Mr. Long was also counsel of record for respondent in docket No. 17752-85. After Mr. Long was assigned to the Greenberg Brothers project, he and Mr. Faber discussed the possibility of settling the Greenberg Brothers partnership cases by a settlement at the partnership level.

On or about August 6, 1990, Mr. Long wrote to Mr. Faber regarding the Greenberg Brothers project, listing First Blood in the subject portion of the letter. In the letter, Mr. Long expressed respondent's willingness to settle both docketed and nondocketed cases on the basis of an "at risk settlement" under section 465. In closing, the letter stated: "This offer to settle is open until September 28, 1990."

---

[7] Mr. Redding, who was a witness in these cases, was recused as the Goodwins' counsel of record. See Model Rules of Professional Conduct rule 3.7.

After receiving Mr. Long's letter, Mr. Faber contacted Mr. Long to discuss whether investment tax credits would be allowed under the settlement offer outlined in his letter. In response to this query, Mr. Long followed up with a letter dated November 1, 1990, to Mr. Faber. This letter stated in relevant part:

> By letter dated August 6, 1990, we extended an offer to settle the above mentioned movie partnerships. We offered to settle these cases on the basis of and[sic] I.R.C. [sec.] 465 "at risk" settlement. * * *
>
> We originally requested that you accept, or reject, the offer to settle by September 28, 1990. * * * Since we were unable to respond to your question within a reasonable time before the September 28, 1990, deadline, we advised you that we would tender a subsequent offer to you which would address the investment tax credit issue.
>
> The purpose of this letter is to extend a new offer to settle these cases on the basis of an "at risk" settlement under I.R.C. [sec.] 465.

In closing, Mr. Long wrote: "This offer is open for forty-five[sic] days, after the date of this letter." Mr. Faber rejected this settlement offer on behalf of the partners.

After the filing of the petitions in docket Nos. 623-92, 13014-92, and 15641-92 Mr. Long again wrote to Mr. Faber on the subject of the Greenberg Brothers project, listing First Blood in the subject portion of the letter. The letter dated September 9, 1992, stated:

> We are offering to settle the above referenced movie tax shelters on the basis of an "at risk" settlement under I.R.C. [sec.] 465. For purposes of the settlement taxpayers are considered at risk to the extent of their initial cash investment in the movie, with no amounts allowed for notes executed by the partnership, or the assumption agreement

executed by the partners.  After the cash is used up the amount at risk is zero.  However, to the extent the partnership earns net income in later years, the amount at risk will be increased in accordance with I.R.C. [sec.] 465.

For the purposes of settlement the respondent will concede all additions to tax, but respondent will not concede additional interest under I.R.C. [sec.] 6621(c).

You have thirty days to accept this settlement offer. After said date it is withdrawn.

The settlement offer made to Mr. Faber was intended as an offer to settle at the partnership level and was not intended to be made to the individual partners.

By letter dated September 14, 1992, however, Mr. Long wrote to Mr. Redding regarding docket No. 17752-85, indicating that respondent was conceding the deficiency asserted for the 1982 partnership taxable year.[8]  Enclosed was a document titled "Stipulation of Settlement" setting forth respondent's concession of the 1982 year.  The letter also stated in pertinent part:

We are willing to settle the First Blood Associates issue for years after 1982 on the basis of an "at risk" settlement under I.R.C. [sec.] 465. * * *

* * * * * * *

Please advise me within the next thirty days if you wish to accept the settlement offer to settle First Blood Associates for all years.  If we have not heard from you in thirty days you should consider the settlement offer as withdrawn.

---

[8]  As of the date of the September 14, 1992, letter the Goodwins were also parties to the cases at docket Nos. 623-92, 13014-92, and 15641-92 pursuant to sec. 6226(c)(1) and Rule 247(a).  The Goodwins subsequently elected to participate in these proceedings pursuant to sec. 6226(c)(2) and Rule 245(b).

Even if you do not wish to settle First Blood Associates for all years, we still intend to concede 1982. We, therefore, request that you return the enclosed document at your earliest convenience.

The "at risk" terms were similar to those outlined in the September 9, 1992, letter to Mr. Faber.

Although the September 14, 1992, letter was addressed to Mr. Redding, it was inadvertently mailed to Mr. Faber. Mr. Faber forwarded the letter to the Goodwins at their home in Montgomery, Texas. Upon receiving the letter on or about October 1, 1992, Mr. Goodwin contacted Mr. Redding to arrange a meeting to discuss its contents. The two eventually met at Mr. Redding's office on October 12, 1992, at which time Mr. Goodwin instructed Mr. Redding to accept the settlement offer extended in Mr. Long's letter.

During this period of the settlement negotiations, and subsequently, Mr. Long understood that either a closing agreement or a Form 870 would be used, and Mr. Faber understood that to effectuate a settlement some documents would have to be executed. Mr. Redding had been in contact with Messrs. Faber and Long.

In a letter to Mr. Long dated October 14, 1992, Mr. Redding stated that he was accepting the settlement offer on behalf of the Goodwins and wrote: "I would appreciate it if you would confirm to me that you are in receipt of a timely acceptance of your settlement offer." There is no indication that the executed

Stipulation of Settlement referred to in Mr. Long's letter was returned.

Respondent received the October 14, 1992, letter on Monday, October 19, 1992. Neither Mr. Long nor any other representative of respondent ever responded to Mr. Redding's request for confirmation of the timely receipt of the Goodwins' acceptance of the settlement.

In late 1992, Mr. George J. Noumair (Mr. Noumair) began settlement discussions with Mr. Long. Mr. Noumair also understood that other documents were needed to effectuate a settlement between the partners and respondent. See Greenberg Brothers Partnership #12, a.k.a. Lone Wolf McQuade Associates v. Commissioner, T.C. Memo. 1998-198.

By letter dated November 15, 1994, Mr. Long wrote to the Goodwins at Montgomery, Texas, offering to settle the instant cases. That letter stated, inter alia:

> Your partnership liabilities are not settled until both you and the IRS properly execute the enclosed closing agreement.
>
>    *     *     *     *     *     *     *
>
>     If your case is settled, the IRS will calculate your tax liabilities for the loss years. You will have to file amended tax returns (Forms 1040X) for the gain years to offset losses suspended under the settlement against income reported from the partnership.

Enclosed with the letter was a closing agreement (Form 906) that set forth the basis of the at risk settlement. On instructions

from Mr. Redding, the Goodwins did not sign and return the closing agreement by the deadline set forth in the letter.

OPINION

The Tax Court is a Court of limited jurisdiction and may exercise jurisdiction only to the extent expressly permitted by statute. See sec. 7442; <u>Trost v. Commissioner</u>, 95 T.C. 560, 565 (1990). We have jurisdiction to decide whether we have jurisdiction. <u>Pyo v. Commissioner</u>, 83 T.C. 626, 632 (1984). Section 6226(f) vests this Court with subject matter jurisdiction to determine all partnership items of the partnership for the partnership taxable year to which the FPAA relates and the proper allocation of such items among the partners.[9] This Court's jurisdiction over a partnership action is predicated upon the mailing of a valid FPAA by the Commissioner to the TMP and the timely filing by the TMP or other eligible partner of a petition seeking a readjustment of partnership items. Rule 240(c); <u>Seneca, Ltd. v. Commissioner</u>, 92 T.C. 363, 365 (1989), affd. without published opinion 899 F.2d 1225 (9th Cir. 1990). Neither

---

[9] Partnership items include each partner's proportionate share of the partnership's aggregate items of income, gain, loss, deduction, or credit. Sec. 6231(a)(3); sec. 301.6231(a)(3)-1(a)(1)(i), Proced. & Admin. Regs. Nonpartnership items are items that are not partnership items. Sec. 6231(a)(4). An affected item is any item to the extent such item is affected by a partnership item. Sec. 6231(a)(5); sec. 301.6231(a)(5)-1T(a), Temporary Proced. & Admin. Regs., 52 Fed. Reg. 6790 (Mar. 5, 1987). Some affected items are subject to the deficiency procedures contained in secs. 6211 through 6215.

the Goodwins nor respondent disputes that the FPAA's were valid and that the petitions were timely filed in these cases.

Pursuant to the TEFRA provisions the tax treatment of partnership items generally is to be determined at the partnership level.  See Maxwell v. Commissioner, 87 T.C. 783, 788 (1986).  Section 6226(c)(1) provides that if a partnership action is brought under either section 6226(a) or (b) each person who was a partner in such partnership at any time during the year in issue shall be treated as a party to such action.  However, section 6226(d)(1)(A) provides, in pertinent part, that section 6226(c) shall not apply to a partner "after the day" on which the partnership items of such partner for the particular partnership taxable year become nonpartnership items by reason of one of the events described in section 6231(b).  A settlement agreement between the Secretary and a partner is among the events causing the conversion of partnership items into nonpartnership items. Sec. 6231(b)(1)(C).  Section 6224(c) provides that in the absence of a showing of fraud, malfeasance, or misrepresentation of fact a settlement agreement between the Secretary and a partner with respect to the determination of partnership items for any partnership taxable year shall be binding on all parties to such agreement.

Whether, with respect to the Goodwins, we have jurisdiction over their partnership items depends upon whether they entered

into a binding settlement agreement with respondent.  Underlying that question is whether the period of limitations for making an assessment may have run.

Settlement Agreements in TEFRA Proceedings

General principles of contract law govern the settlement of tax cases.  Dorchester Indus. Inc. v. Commissioner, 108 T.C. 320, 329-330 (1997).  A prerequisite to the formation of a contract is an objective manifestation of mutual assent to its essential terms.  Manko v. Commissioner, T.C. Memo. 1995-10.  Mutual assent generally requires an offer and an acceptance.  Id.  "'An offer is the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it.'"  Dorchester Indus. Inc. v. Commissioner, supra at 330 (quoting 1 Restatement, Contracts 2d, sec. 24 (1981)).  Settlements offers made and accepted by letters are enforced as binding agreements.  Dorchester Indus. Inc. v. Commissioner, supra at 330-333; Haiduk v. Commissioner, T.C. Memo. 1990-506.

Respondent argues that only a properly executed Form 870-P or a closing agreement (Form 906) constitutes a settlement agreement for purposes of sections 6224(c) and 6231(b)(1)(C).[10]

_____

[10]    Neither the Code nor respondent's regulations define what constitutes a "settlement agreement" for purposes of secs. 6224(c) and 6231(b)(1)(C).  A closing agreement (Form 906), statutorily authorized by secs. 7121 and 7122 has been used to
(continued...)

Without the requirement of a formal written agreement, respondent anticipates confusion and judicial inefficiency: disputes will arise over whether there was a settlement and will necessitate judicial review as to whether there was a settlement and the terms thereof. Since respondent and the Goodwins have not executed either form, respondent contends that they have not entered into a settlement agreement.

While respondent's position may have the advantages respondent attributes to it, we believe that it is unnecessary to decide that issue in the circumstances presented here.[11] Where settlement is conditioned upon the execution of respondent's forms, the execution of such forms controls resolution of whether a settlement agreement was in fact made. See, e.g., Estate of Ray v. Commissioner, T.C. Memo. 1995-561, affd. 112 F.3d 194 (5th Cir. 1997); see also Brookstone Corp. v. United States, 74 AFTR 2d 94-6025, 94-2 USTC par. 50,474 (S.D. Tex. 1994), affd. per

---

[10](...continued)
settle TEFRA cases. See, e.g., Pack v. United States, 992 F.2d 955, 956 (9th Cir. 1993); Monge v. United States, 27 Fed. Cl. 720, 722 n.3 (1993). In addition, we have held that a Form 870-P qualifies as a settlement agreement under sec. 6224(c). Korff v. Commissioner, T.C. Memo. 1993-33.

[11] Respondent also argues that even if there were a binding settlement offer the Goodwins' acceptance was not timely. Given our disposition of the issue, we see no reason to resolve that question, and for our purposes here we assume that Mr. Redding's letter was timely.

curiam without published opinion 58 F.3d 637 (5th Cir. 1995).  We turn to the question whether the settlement was so conditioned.

The negotiations concerning the settlement of the Greenberg Brothers partnerships during this time were primarily conducted by Messrs. Long and Faber.  Mr. Long testified that he intended that in order to consummate any settlement with the partners, a Form 870-P and/or a closing agreement would be executed by the partner or the partner's representative.  This was consistent with Mr. Faber's understanding when he was involved with these cases that further documents would have to be executed.  The only other person with direct knowledge of what happened during this time was Mr. Noumair, and he did not testify.  We have no reason to believe, however, that his testimony would have been different.

Furthermore, all the parties understood that the settlement terms were not limited to the Greenberg Brothers cases that were currently before the Court.  It also included issues involving the additions to tax that are affected items and the applicable interest, issues that were not before the Court.  Moreover, the settlement terms dealt with the tax effects of the Greenberg Brothers partnerships in future years.  At that time, Mr. Long was of the opinion that either a closing agreement or a Form 870

was necessary to effect a settlement of a partner's various liabilitiies.[12]

Although there may have been a general understanding of the terms of the settlement, to effectuate the settlement it was understood that the partner would execute either a Form 870 or a closing agreement. Mr. Redding testified that he had been in contact with both Mr. Long and Mr. Faber concerning the settlement of these cases during this period. Mr. Redding, with his experience in TEFRA proceedings, surely was aware of the circumstances, and we find it improbable that, given the complexity of the settlement, at some time, there had not been some discussion on how the settlements were to be consummated. While as a general rule neither document may be required to settle pecuniary items, all parties understood that one or the other was necessary to give effect to the settlement of the instant cases.

In sum, the Goodwins may have attempted to settle their cases. It is clear, however, that all the parties directly connected with the settlement negotiations understood that to effectuate the settlement either a closing agreement or a Form 870 had to be executed. It is also clear that the Goodwins never

---

[12] Whether this opinion was correct or not is beside the point.

executed either, and, consequently, there was no settlement of their cases.[13]

To reflect the foregoing,

<u>An appropriate order will be</u>
<u>issued denying the Goodwins' motion</u>
<u>to dismiss for lack of jurisdiction</u>.

---

[13] We leave for a subsequent opinion the question whether the Goodwins may be entitled to consistent settlement terms pursuant to sec. 6224(c)(2) and sec. 301.6224(c)-3T, Temporary Proced. & Admin. Regs., 52 Fed. Reg. 6787 (Mar. 5, 1987).