PER CURIAM:
In this consolidated appeal of three consolidated tax cases, petitioners-appellánts and appellant appeal from orders entered by the United States Tax Court in favor of respondent-appellee Commissioner of Internal Revenue (the “Commissioner”). See First Blood Assocs. v. Comm’r, No. 00-4267 (Tax Court Docket Nos. 623-92, 13014-92, 12062-94, 15641-92); Greenberg Bros. P’ship No. 12 v. Comm’r, No. 00-4265 (Tax Court Docket No. 22780-91); Cinema ’84 v. Comm’r, No. 00A263 (Tax Court Docket No. 621-92). We granted the parties’ joint motion to consolidate the three consolidated tax cases into one appeal, because the cases concern the tax treatment of a set of partnerships with overlapping issues and similar factual background.
These cases arise from the Commissioner’s investigation of certain related partnerships formed to market a number of *435 motion picture films. There are three distinct issues on appeal. With respect to the first issue, decided by the Tax Court in a consolidated case under the name Greenberg Bros. Partnership No. 4 v. Commissioner of Internal Revenue, 111 T.C. 198, 1998 WL 525708 (1998), petitioners-appellants and appellant Jo Ann Scarfia, who are partners in the partnerships, appeal on the ground that the Tax Court erred when it concluded that they were not entitled to a “consistent settlement” pursuant to 26 U.S.C.§ 6224(c).[1], [2]
The second issue was decided by the Tax Court in First Blood Assocs. v. Commissioner of Internal Revenue, 75 T.C.M. (CCH) 2565, 1998 WL 341844 (1998). In this appeal, petitioners-appellants Joseph E. and Bernice L. Goodwin assert that the Tax Court erred when it concluded that they had not completed a binding settlement agreement with the Commissioner in 1992.[3]
With respect to the third issue, decided by the Tax Court in First Blood Assocs. v. Commissioner of Internal Revenue, 75 T.C.M. (CCH) 2138, 1998 WL 170137 (1998) and in Greenberg Bros. Partnership No. 12 v. Commissioner of Internal Revenue, 75 T.C.M. (CCH) 2164, 1998 WL 188871 (1998), petitioner-appellant Karin Locke and appellant Jo Ann Scarfia claim that the Tax Court erred when it retained jurisdiction over Scarfia and over Locke because of partnership items listed in the tax returns that they jointly filed with their respective husbands, who had earlier filed petitions in bankruptcy.[4]
We address each of the issues in turn, reviewing the Tax Court’s conclusions of law de novo and its findings of fact for clear error. See, e.g., Estate of Gloeckner v. Comm’r, 152 F.3d 208, 212 (2d Cir.1998).
1. Greenberg Bros. Partnership No. J v. Commissioner of Internal Revenue, 111 T.C. 198 (1998)
A. Consistent Settlement
Petitioners-appellants and appellant (collectively, “appellants”) are partners in a partnership to market certain motion pic *436 ture films. They seek a “consistent settlement agreement” pursuant to 26 U.S.C. § 6224(c) that mirrors in part a settlement reached between the Commissioner and partners Stanley and Betty Block (“Block settlement agreement”). In the Block settlement agreement, the Blocks and the Commissioner agreed to certain tax treatment of partnership items and of related nonpartnership items.[5] Appellants contend that the Commissioner should afford them the same terms as the Blocks for treatment of partnership items, pursuant to 26 U.S.C. § 6224(c).
The Block settlement agreement was comprised of twenty numbered paragraphs. Some of the relevant provisions are as follows:
1. No adjustment to the partnership items shall be made for the taxable years 1982 through 1994 for purposes of this settlement.
2. The taxpayers are entitled to claim their distributive share of the partnership losses from 1982 through 1994 only to the extent they are at risk under I.R.C. § 465.
3. The taxpayers[’] amount at risk for 1982 through 1990 is their capital contribution to the partnership.
4. The taxpayers!’] capital contribution to the partnership is their share of partnership losses as shown on the partnership tax return for 1982. There are no amounts at risk available under this paragraph to carry[ ] forward against losses claimed after 1982.
10. No additions to tax under I.R.C. §§ 6653(a), 6661, 6659, or 6662 will be asserted with respect to the taxpayers!’] investment in the partnership for 1982 through 1994.
(Pet’r’s Mot. for Entry of Order to Compel Resp’t to Extend Offers of Consistent Settlement to Movants, Ex. A, at 1-2.) Appellants assert that under 26 U.S.C. § 6224(c) they are entitled to the terms of paragraph 1 (a partnership item) but need not accept the terms of paragraph 3 (a nonpartnership item), among others.
Section 6224(c) of the Internal Revenue Code (the “Code”) forms part of the Tax Equity & Fiscal Responsibility Act of 1982 (TEFRA), Pub.L. No. 97-248, 96 Stat. 324 (1982). It states in relevant part:
(c) Settlement agreement. — In the absence of a showing of fraud, malfeasance, or misrepresentation of fact—
(1) Binds all parties. — A settlement agreement between the Secretary and 1 or more partners in a partnership with respect to the determination of partnership items for any partnership taxable year shall ... be binding on all parties to such agreement....
(2) Other partners have right to enter into consistent agreements. — If the Secretary enters into a settlement agreement with any partner with respect to partnership items for any partnership taxable year, the Secretary shall offer to any other partner who so requests settlement terms for the partnership taxable year which are consistent with those *437 contained in such settlement agreement. ...
26 U.S.C. § 6224(c).
Temporary regulations were promulgated by the Commissioner to implement Section 6224(c).[6] The relevant portion of those regulations provides as follows:
(a) In general. If the Service enters into a settlement agreement with any partner with respect to partnership items, the Service shall offer to any other partner who so requests in accordance with paragraph (c) of this section settlement terms which are consistent with those contained in the settlement agreement entered into.
(b) Requirements for consistent settlements. “Consistent” settlement terms are those based on the same determinations with respect to partnership items. Settlement with respect to partnership items shall be self-contained; thus, a concession by one party with respect to a partnership item may not be based upon a concession by the other party with respect to a nonpartnership item. Settlements shall be comprehensive, that is,' a settlement may not be limited to selected items.
Temp. Treas. Reg. § 301.6224(c)-3T, 52 Fed.Reg. 6787 (Mar. 5,1987).
The Commissioner interprets Temporary Treasury Regulation § 301.6224(c) 3T as defining the sorts of settlement agreements that are entitled to “consistent settlement” treatment under 26 U.S.C. § 6224(c). For a partner to be 'entitled to “consistent settlement” treatment, the original settlement agreement must be entered into “with respect to partnership items.” 26 U.S.C. § 6224(c). To qualify as a settlement agreement “with respect to partnership items,” the regulation requires that the settlement meet at least two conditions: First, it must be “self-contained.” Temp. Treas. Reg. § 301.6224(c)-3T(b). That is, “a concession by one party with respect to a partnership item may not be based upon a concession by the other party with respect to a nonpartnership item.” Id. Second, the settlement must be “comprehensive.” Id. That is, “the settlement may not be lixhited to selected items.” Id.
In the Commissioner’s view, the appellants are not entitled to “consistent settlement” treatment, under 26 U.S.C. § 6224(c) because the Block settlement agreement “incorporate^] both partnership and non-partnership items.” Appel-lee’s Br. at 45. In light of the Treasury regulation at issue here, we understand this statement to mean that the Block settlement agreement reflects concessions made by the parties of partnership items for nonpartnership items.[7] Since it is, therefore not “self-contained,” it cannot be the basis for affording other partners “consistent settlement” treatment.
*438 Appellants make three arguments as to why they are entitled to a consistent settlement. First, they contend that the Commissioner’s interpretation of Temporary Treasury Regulation § 301.6224(c)-3T is erroneous because, in their view, the regulation requires that the terms offered to one partner addressing partnership items in a settlement agreement must be afforded to all other partners as part of “consistent settlement” treatment. They claim that the fact that partnership and non-partnership items are addressed in the same settlement agreement document is irrelevant to another partner’s right to consistent treatment of partnership items. Appellants assert that the Commissioner cannot condition the offer of consistent settlement of partnership terms on concessions by the partner of nonpartnership items. Second, they assert that if the Commissioner’s interpretation of Temporary Treasury ■ Regulation § 301.6224(c)-3T — that the only typp of original settlement agreement which qualifies for “consistent settlement” treatment is one which is “self-contained” and “comprehensive”— is accepted, then the regulation is an impermissible interpretation of Section 6224(c) of the Code. Third, they contend that if the Commissioner’s interpretation of Temporary Treasury Regulation § 301.6224(c)-3T is a permissible construction of Section 6224(c) of the Code, then the Tax Court erred in concluding that the appellants were not entitled to “consistent settlement” treatment because the Tax Court failed to enter findings on whether partnership items were traded for non-partnership items in the original Block settlement agreement.
The Tax Court adopted the Commissioner’s interpretation of the regulation and, in light of that interpretation, found that the regulation was not “arbitrary, capricious, or manifestly contrary to the statute.” Greenberg Bros. P’ship No. 4 v. Comm’r, 111 T.C. 198, 1998 WL 525708 (1998).
B. Discussion
An agency’s (in this case, the Commissioner’s) interpretation of its own regulation is to be accorded substantial deference and “reversal is warranted only when that interpretation is plainly erroneous.” Florez v. Callahan, 156 F.3d 438, 442 (2d Cir.1998) (internal quotation marks and citation omitted). Similarly, the Commissioner’s interpretation of the Code, as expressed in Treasury regulations, is entitled to substantial deference and a strong presumption in favor of validity. E. Norman Peterson Marital Trust v. Comm’r, 78 F.3d 795, 798 (2d Cir.1996). We have held that a Treasury regulation should “be declared invalid only if it is unreasonable or clearly contrary to the language or spirit of the statute it purports to implement.” Id. (internal citation and quotation marks omitted). The fact that a Treasury regulation is “temporary” does not diminish its legal effect. “Until the passage of final regulations, temporary regulations are entitled to the same weight we accord to final regulations.” Id.
In their first argument, appellants argue that the Commissioner’s interpretation of its own regulation is erroneous. They assert that Temporary Treasury Regulation § 301.6224(e)-3T requires that the IRS offer “consistent settlement” treatment for all original settlement agreements containing partnership items. Appellants contend that the Tax Court erred in adopting the Commissioner’s interpretation that Temporary Treasury Regulation § 301.6224(c)-3T only defines the types of original settlement agreements that can serve as the basis for “consistent settlement” treatment under 26 U.S.C. § 6224(c) rather than simply prescribing the terms that all “consistent settlement” *439 agreements involving partnership items must follow.
Appellants’ argument is without merit. We are required to give substantial deference to an agency’s interpretation of its own regulations unless the interpretation is “plainly erroneous.” Florez, 156 F.3d at 442. The text of the regulation can be plausibly read to provide that original settlements “with respect to partnership items” that can serve as the basis for “consistent settlement” terms must be “self-contained” and “comprehensive.” The text of the regulation does not compel the interpretation that any settlement agreement containing partnership items entitles a partner to a consistent settlement, as the appellants assert. Accordingly, we conclude that the Commissioner’s interpretation is not “plainly erroneous” and that the Tax Court did not err in accepting the Commissioner’s interpretation of Temporary Treasury Regulation § 301.6224(c)-3T.
Second, appellants contend that the Tax Court erred when it concluded that the Commissioner’s interpretation of Temporary Treasury Regulation § 301.6224(e)-3T was a permissible interpretation of Section 6224(c) of the Code. They assert that, under the Commissioner’s interpretation, Temporary Treasury Regulation § 301.6224(c)-3T undermines the congressional intent in enacting 26 U.S.C. § 6224(c), which they argue was intended to ensure uniform tax treatment of partnership items to partners within a partnership. They argue that the Commissioner’s interpretation of the regulation allows the Commissioner to avoid affording consistent tax treatment of partnership items by offering settlement agreements containing partnership and nonpartnership items.
We reject appellants’ contention. When a statute is silent as to the precise issue in question, the Chevron doctrine requires courts to accept the agency’s interpretation unless it is “arbitrary, capricious, or manifestly contrary to the statute.” Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 844, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). In this case, Section 6224 of the Code does not define specifically the phrase “settlement agreement ... with respect to partnership items.” A reading of the text of the statute does not indicate which settlement agreements may serve as the basis for granting “consistent settlement” treatment. See Greenberg Bros. P’ship No. 4 v. Comm’r, 111 T.C. 198, 203, 1998 WL 525708 (1998). In addition, the legislative history of Section 6224 is inconclusive as to Congress’s intent. The House Conference Report merely states: “The Secretary must offer to any partner who so requests settlement terms that are consistent with the settlement with any other partner.” H.R. Conf. Rep. No. 97-760, at 602, reprinted in 1982 U.S.C.C.A.N. at 1374. This general statement does not permit any clear inference as to Congress’s intent with regard to the scope of the phrase “settlement agreement ... with respect to partnership items” for purposes of “consistent settlement” treatment of partnership items. For these reasons, we agree with the Tax Court that Temporary Treasury Regulation § 301.6224(c)-3T is not arbitrary, capricious, or manifestly contrary to Section 6224(c) of the Code and that Temporary Treasury Regulation § 301.6224(c)-3T was a permissible interpretation of that statutory provision.
Third, appellants contend that even if Temporary Treasury Regulation § 301.6224(c)-3T, as interpreted by the Commissioner, allows the IRS to make settlement agreements containing partnership items that do not entitle other partners to “consistent settlement” treatment, the only such settlements for which part *440 ners are not entitled to “consistent settlement” treatment are those in which the IRS and the first settling partner “trade” concessions of -treatment of partnership items for treatment of nonpartnership items. See, e.g., Appellees’ Reply Br. at 27. In that case, appellants assert, the Tax Court erred in denying them “consistent settlement” treatment because it did not enter findings as to whether the “partnership items were ‘traded’ for nonpart-nership items in the Block settlement [agreement].”
The text of Temporary Treasury Regulation § 301.6224(c)-3T does not compel the interpretation that a direct or specific “trade” of a partnership item for a non-partnership item — a quid pro quo — must be identified in order for a settlement agreement to be disqualified from serving as a “consistent settlement” agreement. At the very least, appellants acknowledged to the Tax Court that the Block settlement agreement generally included concessions by both the government and the parties with respect to partnership and affected, nonpartnership items.[8] (U.S. Tax Ct. Tr. of 2/2/97, at 13-15.) Moreover, based upon the structure of the twenty-paragraph Block settlement agreement — which integrates a number of concessions by the government on partnership and nonpart-nership items with a number of concessions by the parties on nonpartnership items and reflects a comprehensive negotiation — we cannot say that the Tax Court erred in concluding that the settlement agreement “contain[ed] interrelated provisions which reflect concessions of partnership and nonpartnership items.” Greenberg Bros. P’ship No. 4 111 T.C. at 204. We therefore conclude that, pursuant to Temporary Treasury Regulation § 301.6224(c)-3T, the Block settlement agreement was not entitled to “consistent settlement” treatment.
For the foregoing reasons, we affirm the order of the Tax Court in each of the cases listed at the margin with respect to the issue of “consistent settlement.”[9]
II. First Blood Assocs. v. Commissioner of Internal Revenue, 75 T.C.M. (CCH) 2565 (1998)
A. Prior Settlement
Petitioner-appellants Joseph E. and Bernice L. Goodwin (the Goodwins) were limited partners in First Blood Associates (the “partnership”).[10] The Goodwins contend that they had completed a binding settlement agreement with the Commissioner in 1992 with respect to their interest in the partnership for the years 1983 through 1990. However, the Commissioner asserts that the Goodwins did not settle their case in 1992 because they failed to execute the necessary forms required to complete a settlement agreement; nevertheless, the Commissioner now seeks to reach a final settlement with the Good-wins.
Joseph F. Long represented the Commissioner in examining the partnership. In August 1990, Long offered to settle a tax dispute with the partnership through Peter L. Faber, who “representad] the partners at the partnership level.” First Blood Assocs. v. Comm’r, 75 T.C.M. (CCH) 2565, 2566, 1998 WL 341844 (1998). After an exchange of letters and comments between Long and Faber, Long wrote the *441 following in a letter dated September 9, 1992:
We are offering to settle the above referenced movie tax shelters on the basis of an “at risk” settlement under I.R.C. § 465. For purposes of the settlement taxpayers are considered at risk to the extent of their initial cash investment in the movie, with no amounts allowed for notes executed by the partnership, or the assumption agreement executed by the partners....
For purposes of settlement the [Commissioner] will concede all additions to tax, but [the Commissioner] will not concede additional interest under I.R.C. § 6621(c).
You have thirty days to accept this settlement offer. After said date it is withdrawn.
(Letter from Joseph F. Long to Peter L. Faber of 9/9/92, at 1-2.)
The Tax Court found that this settlement offer was an offer to settle at the partnership level and not an offer extended to individual partners. First Blood Assocs., 75 T.C.M. (CCH) at 2567.
In a letter dated September 14, 1992, Long wrote to Thomas E. Redding, counsel for the Goodwins, and stated that the Commissioner was willing to concede the tax deficiency asserted against the Good-wins for the 1982 partnership taxable year. Long stated: “A proposed stipulation of settlement is enclosed for your review and signature.” (Letter from Joseph F. Long to Thomas E. Redding of 9/14/92, at 1.) In addition, the letter provided in relevant part:
Please note that the losses claimed with respect to First Blood Associates for years after 1982 are not being allowed by the [Commissioner], We are willing to settle the First Blood Associates issue for years after 1982 on the basis of an “at risk” settlement under I.R.C. § 465. For purposes of the settlement taxpayers are considered to be at risk to the extent' of their initial cash investment in the movie, with no amounts allowed for the notes executed by the partnership or the assumption agreement executed by the partners....
For settlement purposes the [Commissioner] will also concede all additions to tax, except [Commissioner] will not concede additional interest under I.R.C. § 6621(c).
Please advise me within the next thirty days if you wish to accept the settlement offer to settle First Blood Associates for all years. If we have not heard from you in thirty days you should consider the settlement offer as withdrawn.
Even if you do not wish to settle First Blood Associates for all years, we still intend to concede 1982. We, therefore, request that you return the enclosed document[, a stipulation of settlement,] at your earliest convince [sic].

(Id.)

Long’s September 14, 1992 letter addressed to Redding was inadvertently mailed to Faber, who did not represent the Goodwins. Faber forwarded the letter to the Goodwins, who received it on or about October 1, 1992. In a letter dated October 14, 1992, Redding accepted Long’s settlement offer as proposed in the letter dated September 14, 1992. Redding’s acceptance letter requested confirmation that Long had received the Goodwins’ acceptance in a timely manner. The Commissioner received Redding’s letter on October 19, 1992. However, neither Long nor any other representative of the Commissioner responded to Redding’s request for confirmation of a timely acceptance. Moreover, there is no evidence in the record that the executed stipulation of settlement referred to in Long’s letter was returned.
On November 15, 1994, Long wrote another letter to the Goodwins offering to *442 settle the instant cases. Long wrote that the Goodwins’ “partnership liabilities are NOT settled until both you [the Goodwins] and the IRS properly execute the enclosed closing agreement.” Enclosed with this letter was a closing agreement (Form 906) which the Goodwins, on instructions from Redding, did not sign or return by the deadline provided in the letter.
B. Discussion
The Tax Court concluded that although “the Goodwins may have attempted to settle their cases” in 1992, it was clear that both the Goodwins and the Commissioner understood that a settlement could only be completed by the submission of the appropriate closing form, which the Goodwins concededly had not done. First Blood Assocs., 75 T.C.M. (CCH) at 2570. The Court’s conclusion was based on the following findings: that settlement negotiations concerning the partnership were primarily conducted by Long and Faber, id. at 2569; that Long had intended that any settlement between the Commissioner and an individual partner would require the completion and submission of additional forms; that Faber understood that additional documents would have to be submitted before a settlement between the Commissioner and a partner could be finalized, id.; that Red-ding had been in contact with both Faber and Long, id.; and that George J. Noumair, another partner in a related partnership, had entered into similar negotiations with Long, and Noumair “understood that other documents were needed to effectuate a settlement.” Id. at 2568. Because Redding had been in contact with Faber and Long, and because Redding “with his experience in TEFRA-proceedings, surely was aware of the circumstances,” the Court found it “improbable that ... there had not been some discussion on how the settlements were to be consummated.” Id. at 2569-70. The Court concluded that “[w]hile as a general rule [an IRS settlement agreement or closing agreement form is not] required to settle pecuniary items, all parties understood that one ... was necessary to give effect to the settlement of the instant cases.” Id. at 2570.
We conclude that the Court clearly erred in finding that the Goodwins knew that further documentation would have to be submitted before any settlement with the Commissioner would be finalized. The Court’s heavy reliance on the fact that Redding had been in contact with Faber in order to show that Redding must have known that additional documents would have to be submitted is, in our view, misplaced. The Tax Court points to no testimony or fact in the record that would allow the drawing of such an inference. The Court itself found that “[t]he settlement offer made to Mr. Faber was intended as an offer to settle at the partnership level and was not intended to be made to the individual partners.” Id. at 2567 (emphasis added). Faber’s own testimony that he expected additional documents would have to be submitted prior to finalizing any settlement is clearly made in the context of his representation of the partners at the partnership level, not in the context of representing an individual partner. Inasmuch as Faber acted as both counsel for the partners at the partnership level and as counsel to some other individual partners, a broad, general conclusion that Redding somehow knew that additional documents were required to be submitted is clearly erroneous. Moreover, the Tax Court observed that “as a general rule [an IRS settlement agreement or closing agreement form need not] be required to settle pecuniary items.” Id. at 2570 (emphasis added).
The Tax Court also stated that “[t]he only other person with direct knowledge of what happened during this time was Mr. Noumair.” Id. at 2569. However, the fact *443 that Noumair may have believed that further documents had to be submitted before any settlement would be finalized in a similar case involving a related partnership is beside the point. First, as the Court itself conceded, “[Noumair] did not testify.” Id. Second, Noumair’s asserted belief about the related partnership is irrelevant to the partnership at issue in this case. Therefore, the Court’s conclusion that it had “no reason to believe ... that [Noumair’s] testimony would have been different,” id., does not support the Court’s factual findings concerning the Goodwins’ knowledge.
Based on the facts found by the Tax Court with respect to the Goodwins, the Court erred in concluding that the Good-wins (through their counsel) understood that an additional closing agreement or form had to be executed before completion of the settlement.
Accordingly, we vacate the order of the Tax Court in First Blood Assocs. v. Commissioner of Internal Revenue, No. 00-4267, with respect to the issue of “prior settlement” and remand it for further proceedings consistent with this opinion.
III. First Blood Assocs. v. Commissioner of Internal Revenue, 75 T.C.M. (CCH) 2138 (1998) and Greenberg Bros. Partnership No. 12 v. Commissioner of Internal Revenue, 75 T.C.M. (CCH) 2164 (1998)
A. Spousal Partnership Items After Bankruptcy
Michael Scarfia, a partner in First Blood Associates, and his wife, Jo Ann Scarfia, filed joint income tax returns for the tax years under investigation by the Commissioner. The partnership investment was solely in the name of Michael Scarfia, who filed a petition in bankruptcy on May 4, 1986. Jo Ann Scarfia had neither a joint nor a separate interest in the partnership and did not file a petition in bankruptcy.
Similarly, Edwin A. Locke, Jr., a partner in Cinema ’84 and Lone Wolf McQuade,[11] and his wife, Karin Locke, filed joint income tax returns for the tax years under investigation by the Commissioner. The partnership investment was solely in the name of Edwin A. Locke, Jr., who filed a petition in bankruptcy on April 7, 1992. Karin Locke had no interest in the partnership and did not file a petition in bankruptcy.
The Tax Court concluded that although the filing of petitions in bankruptcy by Michael Scarfia and Edwin Locke converted their partnership items into nonpart-nership items and divested the Court of jurisdiction over those two individuals pursuant to Section 6231(b) and Section 6231(c) of the Internal Revenue Code, 26 U.S.C. §§ 6231(b),[12] 6231(c),[13] and Section 301.6231(c)-7T(a), Temp. Treas. Reg., 52 Fed.Reg. 6793 (Mar. 5, 1987) (the bank *444 ruptcy rule),[14] these petitions did not divest the Court of jurisdiction over their respective spouses because the spouses had filed joint income tax returns with their respective husbands which had included partnership items. First Blood Assocs. v. Comm’r, 75 T.C.M. (CCH) 2138, 2139, 2142, 1998 WL 170137 (1998); Greenberg Bros. P’ship No. 12 v. Comm’r, 75 T.C.M. (CCH) 2164, 2165, 2168, 1998 WL 188871 (1998).
B. Karin Locke
The Commissioner concedes that our decision in Callaway v. Commissioner of Internal Revenue, 231 F.3d 106 (2d Cir.2000), compels us to reverse and remand the eases for dismissal with respect to Karin Locke. Callaway involved the death of a husband who held a partnership interest but who filed a joint tax return with his wife. We confronted the question of whether, upon the husband’s death, the conversion of partnership items into non-partnership items allowed the same conversion of partnership items into nonpart-nership items with respect to his surviving wife. Callaway, 231 F.3d at 106. In Callaway, we held that
where only the husband owned an interest in his distributive share of partnership items, the conversion of his partnership items into nonpartnership items necessarily converts into nonpartnership items all the items taken into account on the joint return by reason of his interest. They are therefore nonpartnership items with respect to assessments against either spouse.
Id. at 107.
The facts in the case before us are identical in all material respects to those in Callaway and that case controls the disposition here. Accordingly, we reverse and remand the order of the Tax Court with respect to Karin Locke.
*445 C. Jo Ann Scarfia
On October 18,1999, Jo Ann Scarfia and the Commissioner entered into and completed a closing agreement, pursuant to Section 7121 of the Code.[15] The closing agreement provides in relevant part,
Under section 7121 of the Internal Revenue Code ... Jo Ann Scarfia ... and the Commissioner of Internal Revenue make the following closing agreement:
WheReas, the parties wish to determine, with finality, the taxpayers] income, gains, losses, deductions and credits for 1982 and subsequent years with respect to the Partnership.
Now It Is Hereby Determined And Agreed ... that ... [n]o adjustment to the partnership items shall be made for the taxable years 1982 through 1995 for purposes of this settlement.
(Closing Agreem. on Final Determination Covering Specific Matters of Jo Ann Scar-fia, of 10/18/99, at 1.)
Despite this agreement, Jo Ann Scarfia appeals the order of the Tax Court concluding that it retains jurisdiction over her despite the fact that Michael Scarfia filed a petition in bankruptcy. She contends that the closing agreement does not preclude her appeal because she did not explicitly give up the right to appeal that issue in the text of the closing agreement.
The interpretation of an IRS closing agreement is generally governed by principles of contract law. See Goldman v. Comm’r, 39 F.3d 402, 405 (2d Cir.1994); see also Roach v. United States, 106 F.3d 720, 723 (6th Cir.1997). Closing agreements are entered into in order “to determine finally and conclusively a taxpayer’s liability for a particular tax year or years.” Hopkins v. United States, 146 F.3d 729, 732 (9th Cir.1998). In this case, Scarfia’s closing agreement specifically states that “the parties wish to determine, with finality, the taxpayer[’s] income, gains, losses, deductions and credits ... with respect to the Partnership.” (Closing Agreem. on Final Determination Covering Specific Matters of Jo Ann Scarfia, of 10/18/99, at 1.) As Scarfia contends, she did not have an individual or joint interest in the partnership. Any partnership items attributable to her were those of her husband, Michael Scarfia, and could be ascribed to her only by virtue of their filing of a joint tax return. Therefore, any settlement of partnership items between Jo Ann Scarfia and the Commissioner was an acceptance by Scarfia that the partnership items were being ascribed to her for tax treatment purposes. Furthermore, at the time that Jo Ann Scarfia signed the closing agreement, the Tax Court had already concluded that it did not have jurisdiction over *446 Michael Scarfia because he had filed a petition in bankruptcy. Consequently, Jo Ann Scarfia accepted the closing agreement and agreed that the partnership items were to be ascribed to her after the Tax Court had concluded that it no longer had jurisdiction over Michael Scarfia. Therefore, we conclude that Jo Ann Scar-fia agreed to the Commissioner’s treatment of Michael Scarfia’s partnership items as hers for tax purposes. This closing agreement was, by its terms, final and conclusive. Hopkins, 146 F.3d at 732. Accordingly, Jo Ann Scarfia’s closing agreement precludes her appeal, and she cannot now reopen the question of the treatment of partnership items.
$ ^ ‡ ^ ¡j: ^
For the foregoing reasons, we vacate the orders of the Tax Court in Greenberg Bros. Partnership No. 12 v. Commissioner of Internal Revenue, No. 00-4265, and Cinema ’84 v. Commissioner of Internal Revenue, No. 00-4263, on the issue of “spousal partnership items after bankruptcy”, with respect to Karin Locke. However, we dismiss the appeal of Jo Ann Scarfia in First Blood Assocs. v. Commissioner of Internal Revenue, No. 00-4267, with respect to the issue of “spousal partnership items after bankruptcy” because, prior to this appeal, she settled her claims concerning this issue by concluding a settlement agreement with the Commissioner.

Conclusion

In sum, we conclude that
(1)appellants are not entitled to a “consistent settlement” under 26 U.S.C. § 6224(c) and affirm the order of the Tax Court in First Blood Assocs. v. Commissioner of Internal Revenue, No. 00-4267; Greenberg Bros. Partnership No. 12 v. Commissioner of Internal Revenue, No. 00-4265; and Cinema ’84 v. Commissioner of Internal Revenue, No. 00-4263;
(2) the Tax Court, in its opinion at First Blood Assocs. v. Commissioner of Internal Revenue, 75 T.C.M. (CCH) 2565, 1998 WL 341844 (1998), clearly erred in finding that the Goodwins (through their counsel) understood that an additional closing agreement or form was to be executed before settlement could be finalized, and accordingly, we vacate the order of the Tax Court in First Blood Assocs. v. Commissioner of Internal Revenue, No. 00-4267, and remand with respect to this issue;
(3) the Tax Court erred in retaining jurisdiction over Karin Locke on the basis of her spousal interest in partnership items and reverse the order of the Tax Court in Greenberg Bros. Partnership No. 12 v. Commissioner of Internal Revenue, No. 00-4265 and Cinema ’84 v. Commissioner of Internal Revenue, No. 00-4263 with respect to this issue;
(4) Jo Ann Scarfia entered into a binding closing agreement with the Commissioner which precludes her from appealing the issue of her spousal interest in partnership items and we therefore dismiss her appeal in First Blood Assocs. v. Commissioner of Internal Revenue, No. 00-4267, with respect to this issue.

. Section 6224(c) states in relevant part:
Settlement agreement. — In the absence of a showing of fraud, malfeasance, or misrepresentation of fact—
(1) Binds all parties. — A settlement agreement between the Secretary and 1 or more partners in a partnership with respect to the determination of partnership items for any partnership taxable year shall ... be binding on all parties to such agreement....
(2) Other partners have right to enter into consistent agreements. — If the Secretary enters into a settlement agreement with any partner with respect to partnership items for any partnership taxable year, the Secretary shall offer to any other partner who so requests settlement terms for the partnership taxable year which are consistent with those contained in such settlement agreement....
26 U.S.C. § 6224(c).

. The order in Greenberg Bros. Partnership No. 4 is appealed in First Blood Assocs. v. Commissioner of Internal Revenue, No. 00-4267; Greenberg Bros. Partnership No. 12 v. Commissioner of Internal Revenue, No. 00-4265; and Cinema '84 v. Commissioner of Internal Revenue, No. 00-4263.

. The order in First Blood Assocs. v. Commissioner of Internal Revenue is appealed in First Blood Assocs. v. Commissioner of Internal Revenue, No. 00-4267.

. The order in First Blood Assocs. v. Commissioner of Internal Revenue is appealed in First Blood Assocs. v. Commissioner of Internal Revenue, No. 00-4267. The order in Greenberg Bros. Partnership No. 12, v. Commissioner of Internal Revenue is appealed in Greenberg Bros. Partnership No. 12 v. Commissioner of Internal Revenue, No. 00-4265 and Cinema '84 v. Commissioner of Internal Revenue, No. 00-4263.

. A “partnership item” is defined as “any item required to be taken into account for the partnership's taxable year under any provision of subtitle A to the extent regulations prescribed by the Secretary provide that, for purposes of this subtitle, such item is more appropriately determined at the partnership level than at the partner level.” 26 U.S.C. § 6231(a)(3).
A “nonpartnership item” is “an item which is (or is treated as) not a partnership item." 26 U.S.C. § 6231(a)(4).

. The temporary Treasury Regulation at issue in the instant case, Section 301.6224(c)-3T, was revised and superseded by T.D. 8808, 64 Fed.Reg. 3837, 3839 (Jan. 26, 1999).

. The Commissioner’s brief could be construed to suggest a broader argument that any settlement agreement that contains both partnership items and nonpartnership items is not entitled to "consistent settlement" treatment. See, e.g., Appellee's Br. at 38-39, 44 ("The Block settlement was a ‘mixed’ settlement in that it incorporated both partnership items and non-partnership items, although the non-partnership items were interrelated with the partnership.”) ("The Tax Court held that the settlement did not fit within the requirements for a ‘settlement’ to which the consistent settlement rules apply because it encompassed both partnership and nonpartnership items.”). Because this view is not fully articulated in the Commissioner’s brief, we do not consider it here.

. An “affected item” is "any item to the extent such item is affected by a partnership item.” 26U.S.C. § 6231(a)(5).

. First Blood Assocs. v. Comm’r, No. 00-4267; Greenberg Bros. P'ship No. 12 v. Comm’r, No. 00-4265; and Cinema ’84 v. Comm’r, No. 00-4263.

. First Blood Associates was a partnership formed to purchase and exploit the rights of the film "First Blood.”

. Cinema '84 was a partnership formed to exploit the rights to films such as “The Terminator”; “The Howling II,” "Return of the Living Dead,” “Perfect Strangers,” "A Breed Apart,” and “Special Effects.” Lone Wolf McQuade was a partnership formed to exploit the rights to the films "Lone Wolf McQuade” and "Strange Invaders.”

. Section 6231(b) of the Internal Revenue Code states in relevant part:
Items cease to be partnership items in certain cases.—
(1) In general. — For purposes of this sub-chapter, the partnership items of a partner for a partnership taxable year shall become nonpartnership items as of the date—
(A) the Secretary mails to such partner a notice that such items shall be treated as nonpartnership items....

. Section 6231(c) of the Internal Revenue Code states in relevant part:
*444 Regulations with respect to certain special enforcement areas.—
(2) Items may be treated as nonpartnership items. — To the extent that the Secretary determines and provides by regulations that to treat items as partnership items will interfere with the effective and efficient enforcement of this title in any case described in paragraph (1), such items shall be treated as nonpartnership items for purposes of this subchapter.

. Treasury Regulation Section 301.6231(c)-7T(a) states:
(a) Bankruptcy. The treatment of items as partnership items with respect to a partner named as a debtor in a bankruptcy proceeding will interfere with the effective and efficient enforcement of the internal revenue laws. Accordingly, partnership items of such a partner arising in any partnership taxable year ending on or before the last day of the latest taxable year of the partner with respect to which the United States could file a claim for income tax due in the bankruptcy proceeding shall be treated as nonpartnership items as of the date the petition naming the partner as debtor is filed in bankruptcy.
(b) Receivership. The treatment of items as partnership items with respect to a partner for whom a receiver has been appointed in any receivership proceeding before any court of the United States or of any State or the District of Columbia will interfere with the effective and efficient enforcement of the internal revenue laws. Accordingly, partnership items of such a partner arising in any partnership taxable year ending on or before the last day of the latest taxable year of the partner with respect to which the United States could file a claim for income tax due in the receivership proceeding shall be treated as nonpartnership items as of the date a receiver is appointed in any receivership proceeding before any court of the United States or of any State or the District of Columbia.

. Section 7121 states in relevant part:
Closing agreements
(a) Authorization. — The Secretary is authorized to enter into an agreement in writing with any person relating to the liability of such person (or of the person or estate for whom he acts) in respect of any internal revenue tax for any taxable period.
(b) Finality. — If such agreement is approved by the Secretary ... such agreement shall be final and conclusive, and, except upon a showing of fraud or malfeasance, or misrepresentation of a material fact — •
(1) the case shall not be reopened as to the matters agreed upon or the agreement modified by any officer, employee, or agent of the United States, and
(2) in any suit, action, or proceeding, such agreement, or any determination, assessment, collection, payment, abatement, refund, or credit made in accordance therewith, shall not be annulled, modified, set aside, or disregarded.
26 U.S.C. §7121.